## THE STATE v. JOHN WELCH, Appellant.

### Division Two, November 21, 1905.

1. **RAPE: Corroboration of Prosecutrix.** No corroboration of the testimony of the prosecuting witness as to the commission of a rape upon her is necessary, provided the jury believe her testimony to be true. [Following State v. Marcks, 140 Mo. 656.]

2. **———: Consent: Woman Asleep.** Carnal connection had with a woman who is asleep is had without her consent, and constitutes rape under the statute.

3. **———: Consent After Penetration.** When the offense of rape is completed by penetration, no subsequent submission or consent of the woman will avail the party who committed the crime,

4. **———: On Sleeping Woman: Sufficiency of Evidence.** The evidence in this case is examined, and held sufficient to support a verdict finding defendant guilty of committing rape upon a sleeping woman.

5. **———: Punishment.** The heinousness of the crime of rape is not mitigated by the fact that it was committed while the prosecutrix was asleep; and a sentence of thirteen years imprisonment for such crime is not excessive.

6. **PRACTICE: Failure to Instruct: No Exception.** Defendant cannot be heard, in the appellate court, to complain that the trial court failed to instruct upon all the law of the case, when he

does not call the court's attention to its failure to do so at the time the instructions were read to the jury, and saves no exception on that account.

7. ———: **Excluding Witnesses: Discretion.** Where there is no evidence that the court knew that a witness for the prosecution was in the court room during the time that the rule excluding the witnesses was in force, or that the witness was intentionally violating the rule, with the knowledge and consent of the State's representatives, it cannot be said that the court abused its discretion in afterwards permitting the witness to testify.

Appeal from New Madrid Circuit Court.—*Hon. Henry C. Riley*, Judge.

AFFIRMED.

*Geo. H. Traylor* and *H. C. Riley, Jr.*, for appellant.

(1) The court erred in overruling defendant's demurrer to the State's evidence at the close of the State's case. State v. Patrick, 107 Mo. 147; State v. Burgdorf, 53 Mo. 65. (2) The court erred in permitting witness Dorrity, the son of the prosecutrix, to testify for the State over the objections of the defendant, after the witness had sat in the courtroom in the presence and hearing of the witnesses during the progress of the trial, after the witnesses were sworn and excluded under the rule. (3) The verdict is the result of prejudice and passion of the jury against defendant, as will clearly appear from a careful examination of all the evidence in the case and from their excessive verdict of thirteen years in the penitentiary. State v. Primm, 98 Mo. 368; State v. Young, 119 Mo. 495; State v. Custer, 93 Mo. 242; State v. Packwood, 26 Mo. 340.

*Herbert S. Hadley*, Attorney-General, and *N. T. Gentry*, Assistant Attorney-General, for the State.

(1) The evidence was not only sufficient to make out a prima facie case, but the State's evidence made out a strong case against defendant. Convictions of

rape and of assault with intent to rape have been sus-
tained in many instances where the evidence was much
weaker than in the case at bar.   State v. Huff, 164 Mo.
480; State v. Sanford, 124 Mo. 484; State v. Shroyer,
104 Mo. 441; State v. DeWitt, 152 Mo. 86; State v. Nap-
per, 141 Mo. 406; State v. Hibler, 149 Mo. 478; State v.
Hyatt, 179 Mo. 344.   (2)   Even if witness Dorrity had
violated the rule of the court, the State should not have
suffered thereby, unless it had been shown to the court
that the State's attorney was a party to the violation of
said rule.   State v. Sumpter, 153 Mo. 436; State v. Fan-
non, 158 Mo. 149.

    BURGESS, P. J.—At the September term, 1904,
of the New Madrid Circuit Court, upon an information
theretofore filed by the prosecuting attorney of said
county, defendant was convicted of the crime of rape
upon Frances M. Dorrity, and his punishment assessed
at thirteen years imprisonment in the penitentiary.  The
defense was an alibi.   Defendant's motions for a new
trial and in arrest of judgment having been overruled,
he appeals to this court.

    The prosecutrix was a widow, forty-one years of
age, her husband having been dead eleven years, and
resided on her farm near Cushion Lake, in New Madrid
county. She was the mother of four children, the young-
est of whom was nine and the eldest sixteen years of
age, all of whom were at home with her on the night of
the alleged assault, except the eldest boy, Boss Dorrity.
The defendant was a bachelor, thirty-eight years of age,
and worked for and managed the farm of the prosecu-
trix seven or eight years in succession after the death
of her husband, and about a year prior to the alleged
rape he went to work in a blacksmith shop at Stewart,
in Pemiscot county, about three miles distant from the
prosecutrix.

    On Saturday night, October 3, 1903, according to
the testimony of the prosecutrix, she retired early and

went to sleep.  With her in bed was her little daughter, twelve years of age, and her son and Tom Young, a neighborhood boy, slept in an adjoining room.  Between nine and ten o'clock she was awakened by defendant, who was on top of her and in the act of having sexual intercourse with her.  She testified that she resisted all she could and told defendant to get off and go away, but with one hand he clutched her throat and placed the other over her mouth, which prevented her from screaming.  She stated that she was a weak woman and in ill health, had not yet quite recovered from an attack of smallpox, weighed but one hundred and seven pounds, and the assault occurred during the period of menstruation, so that she did not have sufficient strength to successfully resist the defendant and shake him off.  When the defendant got through and removed his hands from her mouth and throat she screamed, and defendant made his escape through a window near the bed. After getting outside the house he threw a club at the window breaking it in.  Prosecutrix was well acquainted with defendant, and, as it was a moonlight night, she easily recognized him.  As soon as defendant left she immediately awoke her children and Tom Young, all of whom were fast asleep, but she did not tell them what had occurred, "because it was not very nice talk to tell."  She then put on her skirt and shoes and, accompanied by the children, went to the house of her nearest neighbors, Mr. and Mrs. Ike Grimes, living about a mile distant from her home.  She arrived there between ten and eleven o'clock and made complaint of the assault in full to Mrs. Grimes.  After applying camphor to her injured throat the family retired, but prosecutrix was unable to sleep.  The next day, Sunday, she made complaint to a justice of the peace, and defendant was arrested about noon that day.  She denied ever having had any conversation with defendant after he was arrested and released on bail.

Mrs. Ike Grimes testified at the trial to the distress-

ed condition of the prosecutrix and her complaint against defendant when she came to her house on Saturday night, October 3, 1903.

Alfred Kincaid testified that he lived between the home of the prosecutrix and the village of Stewart, and that on the night of October 3, 1903, between ten and eleven o'clock, he saw, recognized and spoke to the defendant, who was carrying a gun and lantern; that defendant was passing the home of witness and going towards Stewart in a direction from the house of the prosecutrix.

B. C. Grimes swore to a conversation he had with defendant about a month before the alleged assault, in which conversation defendant suggested that the witness could go to the home of the prosecutrix, go into her room and have sexual intercourse with her if he had the grit. Witness stated that about sundown on the evening of October 3, 1903, he was at defendant's shop in Stewart and asked him to do some work for him, but that defendant declined, saying that he was going out; that defendant left the shop, going westward in the direction of the house of prosecutrix, and took a lantern with him.

Another witness for the State, George White, testified that on October 3, 1903, he lived at Stewart and slept in the same room with defendant and others; that defendant did not retire until about midnight that night, and that he came into the room on tip-toe. He did not notice whether defendant had a gun or lantern with him. On the day of his preliminary examination defendant stated to witness that he could not prove where he was on any five minutes of the night of October 3, 1903. The testimony of this witness respecting the hour defendant retired was corroborated by Goah Dorrity, nephew of the prosecutrix, who slept in the same room with defendant and witness White. Boss Dorrity, a son of prosecutrix about eighteen years of age, also slept in the same room, but did not hear defendant come in

that night. Witness testified that next day, after he had heard of the assault on his mother, he went home and saw the broken window in his mother's room and a club lying near the window.

Defendant, testifying in his own behalf, denied making the alleged assault on Mrs. Dorrity, and stated that he was at work in his shop at Stewart from dark till between nine and ten o'clock that night; that after getting through with his work he went to the lunch-room of Ed. Welbron and ate some oysters there, going from thence straight to his room and bed, his room being about one hundred steps from Welbron's store; that at the time he retired he did not know whether all the boys occupying the same room had gone to bed, as he did not light the lamp; that he used a lantern to work by in his shop that night and that he was drilling some holes in blocks for a log wagon belonging to the Coombs' mill. He further testified that after he was arrested and released on bond, the prosecutrix came to him and wanted him to 'file her saw. Defendant denied having told George White or anybody else that he could not prove where he was on any five minutes of that night.

Ed. Welbron testified that he was engaged in running a grocery store and lunch counter at Stewart on October 3, 1903. He saw defendant at work in his shop between eight and nine o'clock that evening drilling holes in some iron pieces by the light of a lantern; that defendant worked till ten o'clock and then came to his store, where he bought and ate some potted ham, and that after he had been in the lunch-room about twenty minutes defendant started for his room, saying he was feeling sleepy. Witness attended the defendant's preliminary examination and heard George White say, in the presence of Bud Killian, that he was asleep and did not know what time defendant went to bed on that Saturday night. He heard prosecutrix testify at the preliminary that the defendant came in and went out of her house by the door, and that the assault was com-

.mitted between ten and eleven o'clock. Bud Killian, testifying, corroborated Welbron's testimony respecting the alleged statements of both witness White and the prosecutrix at the preliminary examination.

Tom Young, for the defense, testified that he was eighteen years of age and lived at the home of the prosecutrix on October 3, 1903. He and a son of the prosecutrix slept in a room adjoining her bedroom. Witness stated that after they retired, the prosecutrix went out for a drink of water. He was awakened that night by hearing the stroke which broke the window, and then the prosecutrix ran into his room and commenced hollowing. She told him to get up and get the gun, as somebody was trying to break into the house, but she did not say that anybody had been in the house. Prosecutrix, he said, was crying and appeared much scared. In a short time she had all to dress and go with her to Grimes's house.

In rebuttal the State introduced some witnesses who testified that Ed. Welbron had sold out and was not running a grocery store and lunch-counter at Stewart on October 3, 1903, and evidence was also introduced tending to show that the defendant was not in his shop that night. Two witnesses also testified that the testimony of the prosecutrix at the preliminary examination was the same as that at the trial in the circuit court.

The first assignment of error is with respect to the action of the court in refusing to sustain a demurrer interposed by the defendant to the State's evidence at the close of the State's case. It is said by defendant that the demurrer should have been sustained and defendant discharged, because there was no testimony offered by the State which corroborated that of the prosecuting witness with respect to the rape by defendant upon her. Up to that time defendant had not testified in the case or denied, under oath, the charge against him, and, therefore, the testimony of the prosecutrix stood uncontradicted and made out at least a *prima facie* case, not-

withstanding the assumption of his innocence; hence, the demurrer was properly denied. But even after he had testified in his own behalf and denied his guilt, it was still the province of the jury to determine the weight of the testimony without any corroborating evidence. It is true it was held in the case of State v. Patrick, 107 Mo. 147, that the prosecuting witness in a trial for rape must be corroborated, and when her testimony as to the perpetration of the alleged offense is explicitly contradicted by the defendant, thus creating an equipoise of oath against oath, the evidence will be insufficient to support a conviction; but that case, upon this point, was expressly overruled by the more recent case of State v. Marcks, 140 Mo. 656, in which it was held that no corroboration of the prosecuting witness as to the rape, by any other witness, was necessary in order to a conviction, provided the jury believed her testimony to be true.

Section 1837, Revised Statutes 1899, provides that: "Every person who shall be convicted of rape . . . by forcibly ravishing any woman of the age of fourteen years of age or upward, shall suffer death, or be punished by imprisonment in the penitentiary not less than five years, in the discretion of the jury." To ravish a woman is to have carnal connection with her forcibly, and without her consent, or against her consent; and, if the prosecutrix in the case at bar was asleep at the time, as testified by her, she was, of course, incapable of giving assent. Mrs. Dorrity testified that the first intimation she had of the defendant's presence was after she had been awakened by him while he was in the act of having carnal intercourse with her. She stated in her testimony, "The first I knew he was in my room. He was in my bed and on me. It awaked me. He was committing rape the first I knew he was there." Her children were all asleep at the time. She was not awake when defendant began to have sexual intercourse with her, but when she did awake his privates had entered

her. She had on no clothing at the time except a night-gown. Her testimony was that she did all she could to fight defendant off with her hands and that he placed one of his hands over her mouth and with the other grasped her throat, so that she was unable to scream. As soon as defendant got off her person and left, she awoke the children, put on her skirt and, accompanied by her children, went to the house of Mr. Grimes, a neighbor, where she arrived at eleven o'clock, and informed Mrs. Grimes of what had occurred. The next day she swore out a warrant for defendant, charging him with the offense of rape, and had him arrested.

On her cross-examination Mrs. Dorrity testified that she went to sleep on her back that night and that her nightgown was down and her feet and legs close together; that she slept soundly until awakened by defendant; that her twelve-year-old daughter, who was in the same bed, was also in a deep sleep, and in fact did not awake until after defendant had left the house. She also stated that she did not tell her children, when she awoke them, what had occurred, for the reason that it was a delicate matter to talk to them about.

Under this uncontradicted testimony, was the defendant guilty of the crime of rape? The general, if not universal, rule is that if a man have connection with a woman while she is asleep, he is guilty of rape, because the act is without her consent. Thus, in Reg. v. Young, 14 Cox C. C. 114, a married woman was asleep in bed with her husband, when the prisoner got into the bed and proceeded to have connection with her. When she awoke she at first thought he was her husband, but on hearing him speak and seeing her husband at her side, she flung the prisoner off and called to her husband, and the prisoner ran away. Held, the prisoner was guilty of the crime of rape.

In Commonwealth v. Burke, 105 Mass. 376, the defendant was convicted of the crime of aiding and assisting Dennis Green in the commission of a rape upon

Joanna Caton. The only question before the Supreme Court was whether the evidence would support a conviction. The evidence, the court said, was sufficient to authorize the jury to find that Green, with the aid and assistance of the defendant, on trial, had carnal intercourse with Mrs. Caton, without her previous assent, and while she was, as Green and the defendant both knew, so drunk as to be utterly senseless and incapable of consenting, and with such force as was necessary to effect the purpose. The court said: "We are therefore unanimously of opinion that the crime, which the evidence in this case tended to prove, of a man's having carnal intercourse with a woman, without her consent, while she was, as he knew, wholly insensible so as to be incapable of consenting, and with such force as was necessary to accomplish the purpose, was rape. If it were otherwise, any woman in a state of utter stupefaction, whether caused by drunkenness, sudden disease, the blow of a third person, or drugs which she had been persuaded to take even by the defendant himself, would be unprotected from personal dishonor. The law is not open to such a reproach."

In Payne v. State, 40 Tex. Crim. Rep. 202, a wellconsidered case, it is held that the act of copulation by a man with a sleeping woman, without her consent, is sufficient to constitute rape, although the force used be only such as is necessary to the mere act of copulation.

It is now well settled that, when the woman is *bona fide* asleep, a conviction of rape may be had. [Reg. v. Mayers, 12 Cox C. C. 311; Reg. v. Lock, 27 L. T. (N. S.) 661; Reg. v. Young, 14 Cox C. C. 114.]

But it may be said that the acts and conduct of the prosecutrix after she awoke and found the defendant upon her and "raping" her, as she said, were not such as to make it clear that she made use of all the means at her command to alarm those in the house; that she did not by using her voice or feet, of which latter she seemed to have had free use, make an effort to arouse her

daughter who was sleeping in the same bed with her. In these respects she did not seem to act entirely as a woman of chaste character, jealous of her virtue, would have done. But she knew nothing about the assault and penetration of her person until she awoke and found defendant on her, at which time the penetration had already been made and the offense completed. After that, no submission or consent of the prosecutrix could avail the defendant.

As to whether consent, after penetration, by submission, non-resistance or otherwise, is a good defense to the charge of rape, the authorities are not harmonious. In an elaborate note to Smith v. State, 12 Ohio St. 466, in 80 Am. Dec. 367, it is said: "Consent given after the assault, and before penetration, is a good defense to the charge of rape [Reg. v. Hallett, 9 Car. & P. 748]. But after the offense has been completed by penetration, no submission or consent of the woman will avail the defendant." In Bishop's New Criminal Law, sec. 1122, subdivision 6, it is said: "The true view is believed to be that, when the offense has been made complete by penetration, no remission by the woman or consent from her, however quickly following, can avail the man."

In the case of State v. Cunningham, 100 Mo. l. c. 392, the court says: "It is doubtless true, as a proposition of law, that if consent is given after the assault and before the act is completed by penetration, it will not be rape," thus clearly intimating that consent after the assault and penetration would not cleanse the defendant of guilt; so that whatever the prosecutrix said or did after the rape upon her was completed by penetration could avail the defendant nothing as a defense to the charge.

It is said for defendant that the court erred in failing to instruct the jury upon all the law of the case, but it does not appear from the record that the court's attention was called to its failure to do so, at the time the instructions were read to the jury, or that any exception

was saved upon that account.    [State v. Cantlin, 118 Mo. 100, and authorities cited.]

The defendant contends that error was committed in permitting one of the witnesses for the State, a son of the prosecutrix, to remain in the courtroom while other witnesses for the State were giving their testimony. There is, however, no evidence tending to show that the court knew that the witness was in the courtroom during the forbidden time, or that the witness was intentionally violating the order of the court with respect to the exclusion of witnesses, by and with the knowledge and consent of the representatives of the State; hence, the court committed no abuse of discretion in thereafter permitting the witness to testify as such in the case.

A final contention is that the verdict is the result of prejudice and passion of the jury against the defendant. There is nothing disclosed by the record to justify such an assertion.

The offense is one of the most heinous known to the law, the punishment for which is death or imprisonment in the penitentiary for not less than five years, in the discretion of the jury, and the crime is not mitigated by the fact that it was committed while the prosecutrix was asleep.    Defendant had lived in the family for six years, in a house that he had built for Mrs. Dorrity while in her service.    She knew him well, and as the moon was shining brightly at the time of the assault upon her, she could not possibly have been mistaken as to the identity of her assailant.    Other circumstances adduced in evidence also tended to show he was there at the time indicated by the prosecutrix.    That she was not mistaken in the man there can, we think, be no question, and this being true, the judgment ought not to be reversed upon the ground that the punishment imposed is excessive.

Finding no reversible error in the record, we affirm the judgment.

All concur.