# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4329

_____

James R. Niederstadt,     *

                     *

    Petitioner - Appellee,     *

                     *    Appeal from the United States

v.                    *    District Court for the

                     *    Eastern District of Missouri.

Jeremiah W. Nixon, Attorney General     *

for the State of Missouri; Jim Purkett,     *

                     *

    Respondents - Appellants.     *

_____

Submitted: April 11, 2007
Filed: October 17, 2007

_____

Before LOKEN, Chief Judge, WOLLMAN, ARNOLD, MURPHY, BYE, RILEY, MELLOY, SMITH, COLLOTON, GRUENDER, and SHEPHERD, Circuit Judges, *en banc*.

_____

LOKEN, Chief Judge, with whom MURPHY, RILEY, MELLOY, SMITH and SHEPHERD, Circuit Judges, join.

A Missouri trial court convicted James Niederstadt of sodomy of a sleeping teenager and sentenced him to twenty-five years in prison. The Missouri Court of Appeals reversed, concluding that, because the victim was sleeping, there was insufficient evidence he used "forcible compulsion," as the sodomy statute requires. Mo. Rev. Stat. § 566.060(1). The Missouri Supreme Court reinstated the conviction, State v. Niederstadt, 66 S.W.3d 12 (Mo. banc 2002), and denied Niederstadt's motion

for rehearing. Niederstadt then petitioned for a federal writ of habeas corpus. The district court granted the writ, concluding that Niederstadt's Fourteenth Amendment right to due process was violated by the Missouri Supreme Court's construction of the sodomy statute that was "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." Niederstadt v. Purkett, No. 4:02CV00847, slip op. at 11 (E.D. Mo. Sept. 27, 2005), quoting Bouie v. City of Columbia, 378 U.S. 347, 354 (1964). The State appealed, and a divided panel of this court affirmed. Niederstadt v. Nixon, 465 F.3d 843 (8th Cir. 2006). We granted the State's petition for rehearing en banc and now reverse.

## I.

We quote the Supreme Court of Missouri's undisputed recitation of the background facts, 66 S.W.2d at 14:

> The victim, S.C., was a sixteen-year-old female at the time of the alleged sodomy in 1992. She was the daughter of American missionaries serving in Gambia, West Africa. In 1991, S.C. was sent by her parents to Malden, Missouri, to attend high school and to live with defendant and his family. Prior to coming to defendant's home, she had no sexual experience. In July and August of 1991, defendant began engaging in inappropriate kissing on the lips and fondling of the girl's breasts and touching her between her legs.

> At the religious school she attended, she began getting into trouble. The school administered detention as punishment. Defendant's punishment was to administer whippings to the girl's buttocks, back, and legs. He contended the girl was "rebellious and needed it." The beatings were so severe that S.C. suffered bruising, making it painful for her to walk and difficult for her to participate in physical education classes. The beatings occurred about once per month during her stay in the Niederstadt home. Sometimes on the morning after a beating, the defendant would come into S.C.'s room, take off her clothes and underwear, and count her bruises out loud. Following one such beating,

-2-

defendant attempted to strangle S.C., squeezing her neck and repeatedly saying, "I could kill you right now." He eventually released her. Because of the beatings and threats, on one occasion S.C. attempted to run away from the defendant's home but returned the same day. S.C. stated that she was afraid to report the sexual misconduct to authorities.

Like the beatings, the fondling incidents continued throughout the school year, usually occurring in the early morning. Defendant would come into the girl's room and place his hand under her clothes and underwear. While he touched her, he would masturbate.

The information alleged that the [sodomy] occurred in March of 1992. The victim testified to several such incidents but only gave details as to one in March of 1992. S.C. testified that she had been feeling sick and went to sleep in her room. She was awakened by a sharp pain which she discovered was caused by defendant's finger in her vagina. When she awoke, defendant told S.C. he was "checking [her] temperature." Defendant admitted to that incident. S.C. testified that later in March there were other occasions when defendant penetrated her vagina with his finger.

Niederstadt was charged with sodomy in violation of § 566.060(1). The statute prohibited "deviate sexual intercourse with another person without that person's consent by the use of forcible compulsion." It is conceded that Niederstadt's digital penetration constituted "deviate sexual intercourse" as defined in § 566.010(1). As relevant here, "forcible compulsion" was defined as "[p]hysical force that overcomes reasonable resistance." § 556.061(12)(a).

After a bench trial, the trial court denied Niederstadt's motion for judgment of acquittal and found him guilty of sodomy. The Missouri Court of Appeals reversed, concluding that, because Niederstadt "initiated the sexual act while [the victim] slept" and stopped when she awakened, there was no evidence he used forcible compulsion. The fact that he used forcible compulsion on other occasions, the Court reasoned, did not supply the requisite proof that it was used in committing the charged offense.

-3-

State v. Niederstadt, No. 23612, 2001 WL 995937 (Mo. App. July 23, 2001). A concurring opinion criticized "the State's failure to analyze its evidence and file a charge the evidence will support."

The Supreme Court of Missouri granted discretionary review, concluded that Niederstadt's conduct constituted sodomy under Missouri law, and reinstated the conviction and sentence. The Court first noted there can be "no question but that defendant used physical force to insert his finger in the girl's vagina." Niederstadt, 66 S.W.3d at 15. The Court then discussed the "critical question" of "whether the acts of deviate sexual intercourse were done by use of physical force that overcomes reasonable resistance." Id. (quotation omitted). The Court looked to the coercive beatings, threats, and sexual indecencies the forty-year-old Niederstadt had previously inflicted on a sixteen-year-old girl who was living in his home. The Court concluded that Niederstadt's conduct and his "complete control and dominance over every aspect of the girl's life" provided sufficient evidence for the court to find that he used physical force that overcame "[t]he reasonable resistance expected of an unconscious or sleeping person." Id. at 16. Niederstadt moved for rehearing, raising as a due process issue that the Court had "unforeseeably expanded the scope of conduct that might be prosecuted under § 566.060." The Supreme Court of Missouri summarily denied that motion. Niederstadt then timely filed this petition for federal habeas relief.

## II.

The State first argues that Niederstadt's due process claim is procedurally barred. Federal habeas relief may not be granted on a claim that the state appellate court declined to address because the petitioner failed to meet a state procedural requirement constituting an "independent and adequate state ground." Coleman v. Thompson, 501 U.S. 722, 730 (1991). An "independent and adequate" ground is one that is "firmly established and regularly followed" by the time it is applied. Ford v. Georgia, 498 U.S. 411, 424 (1991). "When a state court decides an issue on the merits

-4-

despite a possible procedural default, no independent and adequate state ground bars consideration of that claim by a [federal] habeas court." Sweet v. Delo, 125 F.3d 1144, 1150 (8th Cir. 1997), cert. denied sub nom. Sweet v. Bowersox, 523 U.S. 1010 (1998).

Under Missouri law, "to preserve a constitutional issue for appellate review, it must be raised at the earliest time consistent with good pleading and orderly procedure." State v. Wickizer, 583 S.W.2d 519, 523 (Mo.banc 1979). The State argues that Niederstadt defaulted his due process claim because it was first raised in his motion for rehearing to the Supreme Court of Missouri. The State explains that, because its brief to that Court urged the interpretation of the sodomy statute the Court ultimately adopted, Niederstadt had both notice and opportunity to raise a due process objection in his responsive brief, before the Court ruled.

After careful review of the record, we conclude this issue was not properly preserved and presented by the State. The record on appeal does not reveal whether the State argued procedural default to the Supreme Court of Missouri in opposing Niederstadt's motion for rehearing. The Court's summary denial of rehearing is customary and gives no indication that the Court was invoking a procedural bar, particularly if the State did not argue that the due process issue was defaulted. In these circumstances, we infer the state court denied this issue on the merits, not on an independent and adequate procedural ground. See Muth v. Frank, 412 F.3d 808, 815-16 (7th Cir.) (collecting cases), cert. denied, 546 U.S. 988 (2005). Moreover, the State cites only the readily distinguishable Wickizer case, which does not begin to establish that the state court would have been applying a "firmly established and regularly followed" principle if it had ruled the due process claim procedurally defaulted on the unusual procedural facts of this case.

## III.

Turning to the merits of Niederstadt's due process claim, in <u>Bouie</u> the state supreme court construed a statute, which on its face limited criminal trespass to wrongful entries, as including the refusal by peaceful civil rights demonstrators to obey a proprietor's order to leave a racially segregated restaurant otherwise open to the public. The Court held that this retroactive judicial expansion of the statute's criminal prohibition violated the defendants' due process rights. As later clarified, <u>Bouie</u>'s due process restriction on judicial interpretation of criminal statutes is limited to those "that are 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" <u>Rogers v. Tennessee</u>, 532 U.S. 451, 461 (2001), quoting <u>Bouie</u>, 378 U.S. at 354. Unlike judicial review of retroactive legislation under the broader Ex Post Facto Clause, review of a court's application of a criminal statute to a particular defendant, which by its nature is retroactive, "rest[s] on core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." <u>Rogers</u>, 532 U.S. at 459.

Niederstadt argues the Missouri Supreme Court's determination that he used forcible compulsion sufficient to violate the sodomy statute violated his right to due process because, contrary to prior reported decisions, the Court ruled that the forcible coercion element is satisfied by the force inherent in a sex offense committed on a sleeping victim, who cannot resist. This ruling was "unexpected and indefensible," he argues, because it rendered the forcible coercion element surplusage, eliminated the statutory requirement that the defendant "use" forcible coercion, and impermissibly equated sodomy with lesser uncharged sex crimes that did not require proof of forcible coercion. The Supreme Court of Missouri concluded that its interpretation of the sodomy statute did not conflict with the narrow due process restriction of <u>Bouie</u> and <u>Rogers</u>. The task of a federal habeas court is to determine whether that conclusion

-6-

was an "unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

1. At the time Niederstadt committed the offense, the Supreme Court of Missouri had not construed the term "forcible compulsion" in § 566.010, nor the term's statutory definition in § 556.061(12)(a), "[p]hysical force that overcomes reasonable resistance." The Missouri Court of Appeals had construed these statutes in a number of cases. In only one prior case had that Court reversed a Missouri sodomy conviction because the evidence failed to establish use of forcible compulsion. State v. Daleske, 866 S.W.2d 476 (Mo. App. 1993). In reinstating Niederstadt's conviction, the Supreme Court of Missouri carefully considered the Court of Appeals decision in Daleske and found it "readily distinguishable" because the defendant in Daleske employed only *de minimis* force and threats, whereas here the victim "was awakened by a sharp pain which she discovered was caused by defendant's finger in her vagina" and suffered other "beatings, physical threats [and] sexual assaults." Niederstadt, 66 S.W.3d at 16, 14.[1]

In Rogers, a divided Court refused to extend Bouie to a state court decision overruling a common law rule that would have barred petitioner's conviction. Like Bouie, this case involves a state court decision construing a criminal statute. Thus, it is instructive to consider how the *dissenting* Justices in Rogers -- those who would have extended Bouie -- would apply Bouie in this type of case:

---

[1]We disagree with Niederstadt's assertion that the Supreme Court of Missouri's decision collapsed the distinct offenses of sodomy and deviate sexual assault, defined in § 566.070(1) as deviate sexual intercourse without the victim's consent. By distinguishing Daleske as involving only *de minimis* force and threats, the Court preserved a distinction between the offenses. 66 S.W.3d at 16. Moreover, as there is no Double Jeopardy Clause concern, we fail to see why such a collapse would violate due process so long as it was not an "unexpected and indefensible" interpretation of state law. As we shall explain, this interpretation was neither.

-7-

> Many criminal cases present some factual nuance that arguably distinguishes them from cases that have come before; a court applying the penal statute to the new fact pattern does not purport to *change* the law. That, however, is not the action before us here, but rather, a square, head-on *overruling* of prior law . . . .

532 U.S. at 471 (Scalia, J., dissenting). In this case, the Supreme Court of Missouri did not overrule prior law, it applied the governing statute to a new fact pattern, engaging in the type of fact-based analysis described in Justice Scalia's dissent. Indeed, as the Supreme Court of Missouri had not previously considered the statute, there was no prior governing law to overrule. As we said in Hagan v. Caspari, 50 F.3d 542, 547 (8th Cir. 1995), "until the state's highest court has spoken on a particular point of state law, the law of the state necessarily must be regarded as unsettled." A ruling on an unsettled issue of state law will rarely if ever be unexpected and indefensible.

2. Niederstadt argues that the Supreme Court of Missouri's construction of "use of forcible compulsion" reconfigured the sodomy statute in a totally unexpected way by eliminating the State's need to prove the defendant used force over and above the sex act itself to overcome the victim's reasonable resistance. But this argument ignores over one hundred years of Missouri criminal statutes and judicial decisions. In State v. Welch, 89 S.W. 945 (Mo. 1905), the Supreme Court of Missouri affirmed the rape conviction of a man who penetrated a sleeping victim and continued the assault when she awakened. The penal code then defined rape as "forcibly ravishing any woman" who had reached the age of fourteen. The Court explained:

> To ravish a woman is to have carnal connection with her forcibly, and without her consent . . . . The general, if not universal, rule is that, if a man have connection with a woman while she is asleep, he is guilty of rape, because the act is without her consent.

\* \* \* \* \*

-8-

[The victim] knew nothing about the assault . . . until she awoke . . . at which time the penetration had already been made and the offense completed. After that no submission or consent of the prosecutrix could avail the defendant.

* * * * *

[T]he crime is not mitigated by the fact that it was committed while the prosecutrix was asleep.

89 S.W. at 947-48. In other words, the court equated unconsented penetration of a sleeping woman with *forcible* rape.

The Supreme Court of Missouri expanded the rule of <u>Welch</u> in <u>State v. Atkins</u>, 292 S.W. 422 (Mo. 1926), affirming the rape conviction of a physician who while examining a patient penetrated her by surprise and stopped when she protested. The Court explained:

It is plain that, if appellant did penetrate prosecutrix sexually . . . no more physical force was employed by him than is necessarily incident to such an act when done with the consent of the woman. . . . One phase of the contention concerning the insufficiency of the evidence is that . . . the alleged act of ravishment was not forcible within the meaning of [the statute]. . . . But the law has been otherwise declared in this state.

* * * * *

If it is rape under our statutes for a man to have illicit sexual connection with a woman while she is asleep, and incapable of consenting . . . we are unable to see why it is not also rape for a man to have improper sexual connection with a woman by accomplishing penetration through surprise . . . . <u>In all cases of that sort the physical force merely to effect penetration without the employment of further force to overcome resistance, together with the want of consent, should, and, under the rule</u>

> announced in the Welch Case, does, constitute force within the meaning
> of our statute defining and punishing rape.

292 S.W. at 425-26 (emphasis added).

Welch and Atkins were rape cases, not sodomy cases.  In 1979, the Missouri Legislature revised the statutes governing both rape and sodomy.  The rape statute was amended to change the "ravishing" language to "use of forcible compulsion."  Mo. Rev. Stat. § 566.030(1).  But the Comment to that subsection advised that it "continues the common law concept of forcible rape -- intercourse by 'forcible compulsion'." At the same time, the sodomy statute, which had previously defined the crime without regard to force or lack of consent, was amended in § 566.060(1) to include the same "use of forcible compulsion" language adopted to define rape.  The Comment to this statute advised, "The provisions of this section correspond with the rape provisions of § 566.030."

This historical review makes crystal clear what common sense teaches -- it was neither unexpected nor indefensible for the Supreme Court of Missouri to construe the Missouri rape and sodomy statutes in effect when Niederstadt committed his offense as applying to the unconsented penetration of a sleeping woman, just as the Court had applied prior rape statutes for a century, consistent with "[t]he general, if not universal, rule."  Nor is there reason to infer that 1979 legislative amendments described as continuing the historic concept of forcible rape, and applying that concept to the crime of sodomy, were intended to overrule this longstanding judicial interpretation.[2]  Thus, Niederstadt had the fair notice due process requires that his

---

[2]In language since repealed, the 1979 version of § 566.070.1 made "deviate sexual intercourse with another person . . . who is incapacitated" a class C felony punishable less severely than sodomy. A definitional provision, § 566.020.1, clarified that "incapacity" in this context did not include sleeping.  Moreover, if unclear, the Supreme Court of Missouri's resolution of that question would not violate Bouie.

-10-

despicable sexual abuse of a sleeping teenage victim would be punished in this fashion. As <u>Bouie</u> requires no more, the Supreme Court of Missouri's denial of Niederstadt's due process claim was not an unreasonable application of clearly established federal law and must be upheld under our deferential standard of review.

The judgment of the district court is reversed and the case is remanded with instructions to deny the petition for a writ of habeas corpus.

COLLOTON, Circuit Judge, with whom GRUENDER, Circuit Judge, joins, concurring in the judgment.

I conclude that James Niederstadt's due process claim was procedurally defaulted in the Missouri courts, and that he is barred from pursuing it in this federal habeas corpus proceeding. I therefore concur in the judgment reversing the decision of the district court.

Under Missouri law, a constitutional claim must be raised at the earliest opportunity, *State v. Galazin*, 58 S.W.3d 500, 505 (Mo. 2001), and a state prisoner who fails to present his claim in accordance with state procedure is barred from raising the claim in a federal habeas corpus proceeding. *Sweet v. Delo*, 125 F.3d 1144, 1149-50 (8th Cir. 1997). Whether or not Niederstadt was required to raise his due process claim in the trial court, he had an adequate opportunity to present the claim to the Supreme Court of Missouri after that court accepted transfer of the case from the Missouri Court of Appeals. The trial court had entered a judgment that Niederstadt violated § 566.060(1) of the Missouri Revised Statutes. Two alternative arguments were available to Niederstadt on appeal: (1) as a matter of Missouri law, the trial court erred in concluding that the statute encompassed his conduct, and (2) if the trial court's conclusion that the statute did reach his conduct was correct as a matter of state law, then the result was so unexpected and indefensible as to violate the Due Process Clause of the Fourteenth Amendment. *See Rogers v. Tennessee*, 532

U.S. 451, 457 (2001). As the State points out, this is the very course followed by the defendant in *Rogers*, *see State v. Rogers*, 992 S.W.2d 393, 401-02 (Tenn. 1999), and an opportunity to raise the constitutional claim likewise was readily available to Niederstadt.

The state supreme court's summary denial of Niederstadt's motion for rehearing, in which he raised a federal due process claim for the first time, should not be construed as opening up the merits of a previously defaulted federal issue. The purpose of a motion for rehearing under Missouri law is "to call attention to material matters of law or fact overlooked or misinterpreted by the court, as shown by its opinion or order of dismissal." Mo. Sup. Ct. R. 84.17 (2002); *Diamond v. Wyrick*, 757 F.2d 192, 193 (8th Cir. 1985) (per curiam). The Supreme Court of Missouri has firmly established and regularly followed a rule in appeals that it will not consider new issues raised for the first time in a motion for rehearing. *Allen v. Globe-Democrat Publishing Co.*, 368 S.W.2d 460, 467 (Mo. 1963) (per curiam); *see Graf v. Wire Rope Corp. of America*, 861 S.W.2d 588, 592 (Mo. App. 1993).

There is no cause to conclude that the State failed to preserve or present the issue of procedural default in the state court proceedings. The State was forbidden by the rules of court to file a response to Niederstadt's motion for rehearing unless the state supreme court requested one, Mo. Sup. Ct. R. 84.17 (2002); *Beach v. State*, 220 S.W.3d 360, 366 n.1 (Mo. App. 2007) (per curiam), and the docket reflects that the court denied Niederstadt's motion for rehearing without seeking a response. (Appellee's App. 16). Niederstadt cites no appeal in which the Supreme Court of Missouri has considered the merits of a claim raised for the first time in a motion for rehearing. Nothing in the court's summary denial of Niederstadt's motion suggests that the decision "rest[ed] primarily on federal law" or was "interwoven with the federal law." *See Coleman v. Thompson*, 501 U.S. 722, 733 (1991). The natural inference from the summary order – particularly given that it was entered without seeking an opposing brief on Niederstadt's new constitutional claim – is that the court

did not depart from its longstanding refusal to consider new issues on rehearing. *See Byrd v. Delo*, 942 F.2d 1226, 1231-32 (8th Cir. 1991). Consistent with this view, our precedent holds that raising a claim for the first time in a motion for rehearing before the Supreme Court of Missouri does not avoid a procedural bar. *Tokar v. Bowersox*, 198 F.3d 1039, 1046 n.7 (8th Cir. 1999).[3]

For these reasons, Niederstadt defaulted his due process claim in state court pursuant to an independent and adequate procedural rule in Missouri. Therefore, review of the federal claim is barred in this proceeding unless Niederstadt shows cause for the default and actual prejudice as a result of the alleged constitutional violation, or demonstrates that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Niederstadt does not argue "cause" and "prejudice," but the district court thought the claim should be considered, even assuming a procedural default, under the miscarriage of justice or "actual innocence" exception to procedural default. Rejecting the recommendation of a magistrate judge that the claim was procedurally barred, the district court reasoned that Niederstadt has produced "clear and convincing evidence that, absent the supreme court's unlawful broadening of the forcible sodomy statute, no reasonable court would have found [him] guilty of the crime under existing facts." *Niederstadt v. Purkett*, No.

---

[3]The court's alternative suggestion, *ante*, at 5, that the State has failed to show that the Supreme Court of Missouri relied on a procedural rule that is "firmly established and regularly followed" presumably is *dictum*, for resolution of the default question on that basis would be inconsistent with the court's conclusion that Niederstadt's constitutional claim should be reviewed under the deferential standard of 28 U.S.C. § 2254(d). If the state court purported to rely on a procedural ground in rejecting the federal constitutional claim, but that ground is later deemed inadequate to bar federal habeas review, then the federal claim was not adjudicated on the merits by the state court, *see Brown v. Luebbers*, 371 F.3d 458, 461 (8th Cir. 2004) (en banc), and the pre-AEDPA standard of review likely would apply. *See Silverman v. Edwards*, 69 F. App'x 489, 491 (2d Cir. 2003); *cf. Clemons v. Luebbers*, 381 F.3d 744, 755 (8th Cir. 2004).

4:02CV00847, slip op. at 7 n.7 (E.D. Mo. Sept. 27, 2005) (citing *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992)).

I disagree with Niederstadt's contention that he may avoid the procedural default by showing a "miscarriage of justice" under the circumstances of this case. This exception to default "is concerned with actual as compared to legal innocence," *Sawyer*, 505 U.S. at 339, and the term "actual innocence" means "factual innocence." *Bousley v. United States*, 523 U.S. 614, 623 (1998); *McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001). Niederstadt presents no new evidence of factual innocence, *cf. Schlup v. Delo*, 513 U.S. 298, 324 (1995), and he does not deny any of the factual allegations advanced during his prosecution. There is no dispute that he was factually guilty of violating § 566.060(1) as the statute was interpreted by the Supreme Court of Missouri. Niederstadt's argument that federal law prohibited the Missouri courts from interpreting the state statute to encompass his conduct is purely legal.

Niederstadt's reliance on the "miscarriage of justice" exception, moreover, implies that a defendant *never* could default a due process claim based on *Rogers* or *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964), for if the claim had merit, then the defendant would always be "actually innocent." And because the defaulted due process claim would not be adjudicated on the merits by the state courts, *see* 28 U.S.C. § 2254(d), a habeas corpus applicant would always be entitled to *de novo* review of his constitutional claim raised for the first time in federal court, while applicants who present the due process claim in state court must proceed under the deferential review standards of AEDPA. This is an unlikely construct, and it finds no support in federal decisions enforcing state procedural bars with respect to similar constitutional claims based on *Rogers* or *Bouie*. *See Chambers v. McCaughtry*, 264 F.3d 732, 739 (7th Cir. 2001); *Coley v. Belleque*, No. 03-569, 2006 WL 1007248, at *1 (D. Or. 2006).

For these reasons, I conclude that Niederstadt is not entitled to relief. I therefore concur in the judgment reversing the decision of the district court and remanding with instructions to deny the petition for writ of habeas corpus.

ARNOLD, Circuit Judge, with whom WOLLMAN and BYE, Circuit Judges, join, dissenting.

I respectfully dissent from the judgment of the court because the court applies an incorrect standard in reviewing Mr. Niederstadt's claim and reaches the wrong conclusion on its merits.

I.

The court does not acknowledge that there is an issue with respect to whether the Antiterrorism and Effective Death Penalty Act (AEDPA) standard of review, *see* 28 U.S.C. § 2254(d)(1), applies to Mr. Niederstadt's claim: It passes over the matter entirely. After deciding that the state of Missouri had not properly preserved the issue of procedural default in state court, the court simply states that "[t]he task of a federal habeas court is to determine whether [a state court's] conclusion was an 'unreasonable application of ... clearly established federal law, as determined by the Supreme Court.' " But that standard applies only if Mr. Niederstadt's claim was "adjudicated on the merits in state court." 28 U.S.C. § 2254(d).

The court, in discussing the question of procedural default, relies on *Muth v. Frank*, 412 F.3d 808 (7th Cir. 2005), *cert. denied*, 546 U.S. 988 (2005), for the proposition that if a state court denies a claim summarily we should presume that it decided it on the merits. But the motion for rehearing that Mr. Niederstadt filed in the Missouri Supreme Court contains claims asserting that the court's interpretation and application of Missouri statutes was wrong both under Missouri law and the due process clause. The Missouri Supreme Court's response was a one-line order stating simply that Mr. Niederstadt's "motion for rehearing is overruled." The order did not

-15-

discuss or even acknowledge Mr. Niederstadt's constitutional claim or any other claim that he raised.

Although in *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999), *cert. denied*, 528 U.S. 1143 (2000), we stated that "the summary nature of a state court's ruling does not affect the § 2254(d)(1) standard of review," the state court in *James* had reviewed the federal claim and "label[ed]" it " 'without merit.' " Likewise, *Weeks v. Angelone*, 528 U.S. 225, 231, 237 (2000), is distinguishable: In that case, the state court had specifically referred to the claim at issue (issue "44"), along with several others, "considered" them, and found that they had "no merit." *Weeks v. Virginia*, 248 Va. 460, 465, 450 S.W.2d 379, 383 (1994).

Since our decision in *James*, moreover, we have remarked that determining when a state court has decided an issue on the merits is "not so easy" and indicated that there are no hard-and-fast rules. *Brown v. Luebbers*, 371 F.3d 458, 460-61 (8th Cir. 2004) (en banc), *cert. denied*, 543 U.S. 1189 (2005). Indeed, in that case, both the court's and the dissenting opinion discussed at length the question of whether the state court had reached petitioner's federal claim or had decided only the state claim that was based on the same factual predicate. Because of all the labor devoted to that question, it is plain that both opinions in *Brown* proceeded on the assumption that if the state court exhibited no apparent awareness of the federal claim or gave no hint that it had considered it, we could not conclude that it had been adjudicated on the merits. And more recently we conducted a detailed examination of a state court opinion before determining that it resolved a particular claim on the merits. *Weaver v. Bowersox*, 438 F.3d 832, 838-39 (8th Cir. 2006).

Thus, the premise of all of our previous relevant cases seems to be that when a state court has said nothing with respect to a federal claim, we can have no basis for concluding that it had adjudicated it. It therefore comes as a surprise to learn that we now have a binary approach to such matters: If a claim was dismissed for something

-16-

other than a procedural default, it must necessarily have been adjudicated on the merits. Perhaps there is some justification for this rule, but the court offers none, and in the process overrules *sub silentio* a number of our cases that are inconsistent with any such principle. Or maybe our previous cases can be distinguished on the ground that in them the state court did discuss some claims and thus it might reasonably be inferred that the state court simply overlooked some claim or claims that went unmentioned. But the court here does not make that distinction, and I would not be inclined to make it either, for reasons that I allude to later.

It might also be argued that we ought not to presume that a state court has not considered a claim just because it did not mention it. After all, it often happens that appellate courts fail to discuss assignments of error without mentioning them directly, but the court's judgment presumably concludes them nevertheless. But this kind of reasoning probably makes less sense when, as here, the state and federal claims are based on the same factual predicate, and the court does not advance this argument in defense of its ruling.

I think, moreover, that the principle apparently adhered to in our previous cases has a better claim to recognition than the one that the court adopts. First of all, one apparent purpose of AEDPA is to promote comity and to provide a certain amount of deference to the place of state courts in our overall federal system. The statute was intended to increase respect for state court judgments: It is therefore the states' interests that are at stake here, and they should be alert to their vindication. I see no reason to encourage state courts to be laconic. Nor do I believe that it burdens a state court significantly to require it to devise an order that will allow a federal court to discern whether the state court has adjudicated a federal claim. The statute, moreover, does not by its own terms apply unless the federal claim has been adjudicated; and if the relevant state court order is opaque with respect to whether it decides a matter, the condition in the statute is not satisfied. To put it another way, if a state wants to claim the shelter that the statute provides, it has the burden to show that it is entitled to it.

It is important to appreciate that in passing AEDPA Congress meant only to limit a state prisoner's right to an unrestricted review of a habeas claim, not to eliminate it. By requiring that a claim be adjudicated on the merits in state court before the review by a federal court would be restricted, I believe that Congress made clear that a habeas petitioner must receive an unrestricted, *i.e.*, *de novo*, review of his or her constitutional claims by either a state or federal court. We therefore correctly conducted an intensive review in our previous cases to determine whether the state court in fact had decided the federal claim at issue. When forced to choose between possibly depriving a habeas petitioner of unrestricted review by any court and requiring a state court simply to say that it conducted such a review, I think that Congress's intent compels us to choose the latter.

I would therefore review Mr. Niederstadt's claim *de novo*.

II.

Even assuming for the sake of argument that the due process claim here was adjudicated on the merits and AEDPA therefore applies, I believe that Mr. Niederstadt would be entitled to habeas relief. In those cases in which the state court decides an issue but provides no explanation, we "conduct an independent review of the record and applicable law to determine whether state court decision is contrary to federal law [or] unreasonably applies clearly established law." *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). For the reasons that follow, I believe that the state court's denial of Mr. Niederstadt's due process claim is an unreasonable application of clearly established Supreme Court due-process precedent.

Over forty years ago, the Supreme Court said that "[t]he basic principle that a criminal statute must give fair warning of the conduct that it makes a crime has often been recognized by this Court." *Bouie v. City of Columbia*, 378 U.S. 347, 350-51 (1964). While the due process clause does not incorporate the specific prohibitions of the *ex post facto* clause, *Rogers v. Tennessee*, 532 U.S. 451, 458 (2001), the

"concepts of notice [and] foreseeability" are at its core, *id.* at 459. Thus the due process clause is violated when a court gives retroactive effect to "a judicial construction of a criminal statute [that] is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.' " *Bouie*, 378 U.S. at 354 (quoting Jerome Hall, *General Principles of Criminal Law* 61 (2d ed. 1960)); *see also Rogers*, 532 U.S. at 461.

The Missouri sodomy statute, at the time of Mr. Niederstadt's conduct, prohibited "deviate sexual intercourse with another person without that person's consent by the use of forcible compulsion." Mo. Rev. Stat. § 566.060.1 (Supp. 1991). Deviate sexual intercourse included "any sexual act involving the genitals of one person and the mouth, tongue, hand, or anus of another person." Mo. Rev. Stat. § 566.010(1) (Supp. 1991). Forcible compulsion was defined as "physical force that overcomes reasonable resistance" or "a threat, express or implied, that places a person in reasonable fear of death, serious physical injury, or kidnapping of himself or another person." Mo. Rev. Stat. § 556.061(12) (Supp. 1991).

Mr. Niederstadt admits that the evidence would have been sufficient to convict him of deviate sexual assault in the first degree, Mo. Rev. Stat. § 566.070(1) (1986), which applied when the victim was an incapacitated person, or deviate sexual assault in the second degree, Mo. Rev. Stat. § 566.080(1) (1986), which applied to an assault of a sixteen-year-old victim by a person seventeen years or older. Neither of these crimes included the element of forcible compulsion. Mr. Niederstadt argues that he did not use forcible compulsion to accomplish the act, and that the Missouri Supreme Court's construction of § 556.061(12)(a) to include his conduct diverged so widely from the law as it existed at the time of his offense as to violate his due process rights.

The Missouri Supreme Court held that Mr. Niederstadt used physical force against S.C., a minor dependent on him for care, in such a manner that her reasonable resistance to his sexual assaults was greatly reduced and then sodomized her while she

-19-

slept. The act of penetrating S.C.'s vagina itself required force to be applied to her body, the court noted, and it held that that satisfied the physical force element of the statute. *Niederstadt II*, 66 S.W.3d at 14-16.

Under *Bouie*, we must determine what law "had been expressed prior to the conduct in issue." We first examine the statutory language: The statute, after all, is the primary expression of the law applicable to this case. Section 566.060 required that the "deviate sexual intercourse" be accomplished "*by the use of* forcible compulsion" (emphasis added); it does not give notice that the intercourse itself can be the force used to accomplish the intercourse or that a sleeping or unconscious victim can be "compelled." Under § 556.061(12), "forcible compulsion" is defined as "physical force that overcomes reasonable resistance," but this definition does nothing to bring Mr. Niederstadt's conduct within the scope of § 566.060: It provides no notice that "physical force" can be the intercourse itself or that the victim (whose "reasonable resistance" is overcome) may be asleep. Therefore we do not believe that the statutory language provided "fair warning" that Mr. Niederstadt's conduct came within the terms of the crime with which he was charged.

Case law also plainly failed to provide the notice that due process requires. No Missouri case before Mr. Niederstadt's holds or implies that the force necessary for forcible compulsion is equivalent to the performance of the sexual act which the statute states the forcible compulsion is used to accomplish. Nor had any case held or implied that a defendant could be convicted under § 566.060 when the victim was asleep and unaware of the acts alleged to be "forcible compulsion." For example, in *State v. R_ D_ G_*, 733 S.W.2d 824, 827 (Mo. Ct. App. 1987), the court's discussion of force focused on the defendant's grabbing and holding the victim's arms and dragging her into a bedroom. Here S.C. testified that she was not even aware that Mr. Niederstadt was in the room until she awoke and, according to the Missouri Supreme Court, the deviate sexual intercourse had already been accomplished "by the use of forcible compulsion," Mo. Rev. Stat. 566.060.

-20-

In holding that the force used to penetrate S.C.'s vagina could fulfill the element of forcible compulsion, the Missouri Supreme Court reconfigured the sodomy statutes in an unexpected way. Under this construction, the element of "forcible compulsion" collapses into the element of "deviate sexual intercourse," Mo. Rev. Stat. § 566.060.1 (Supp. 1991), and sodomy, when committed against a victim from whom virtually no reasonable resistance is expected, such as the sleeping victim here, becomes indistinguishable from the offense of deviate sexual intercourse in the second degree, which did not require proof of forcible compulsion. At the time of Mr. Niederstadt's conduct, neither the plain language of the sodomy statute nor the case law supported such a construction. Where, as here, a court construes a criminal statute in a new way that removes an entire element from it, it violates the principle of fair warning that underlies the constitutional right to due process if, in the same case, the court uses that new statutory interpretation to uphold the defendant's conviction.

As often happens, the state makes arguments and relies on authorities in its presentation to the en banc court that it never made to the district court or to the panel of our court that heard the case originally. The fact that this tack is late-blooming is evidence enough that the state did not originally regard these authorities as relevant, and rightly so. The court nevertheless adopts the state's new arguments when it holds, *ante* at 8-10, that some old cases dealing with rape are helpful here. *See State v. Welch*, 89 S.W. 945 (Mo. 1905); *State v. Atkins*, 292 S.W. 422 (Mo. 1926). But those cases are inapposite because they do not deal with a calibrated statutory scheme that deliberately distinguishes forcible sexual acts from acts that are committed on the incapacitated, including, presumably, the insensate.

The court also maintains, *ante* at 7 n.1, that the Missouri Supreme Court preserved the distinction between the two offenses at issue here, but in fact the state court's attempt to distinguish *State v. Daleske*, 866 S.W.2d 476 (Mo. App. 1993), was at best startling and at worst entirely fanciful. The court also remarks, *ante* at 7 n.1, that collapsing the two offenses would not be unconstitutional unless it was

unexpected and indefensible. But surely the court does not mean to say that it expects state courts to collapse statutes or that it would defend state courts that did so.

I would therefore conclude that the Missouri Supreme Court's decision was an unreasonable interpretation of United States Supreme Court due-process jurisprudence in *Bouie* and other cases because I believe that it is quite obvious that neither the plain language of the statute nor state case law at the time of Mr. Niederstadt's conduct defined "forcible compulsion" as encompassing his conduct. I agree with the Missouri Court of Appeals, which stated in its opinion reversing Mr. Niederstadt's conviction that "there are no facts in this case of persuasion or force. Defendant appeared while S.C. was sleeping. He initiated the sexual act while she slept. Defendant's actions caused her to awaken. There was no evidence of forcible compulsion, as § 556.061(12) defines that term, before or after S.C. awoke." *Niederstadt I*, 2001 WL 995937, at *3. Significantly, one member of the panel, after concurring in the state court of appeals's unanimous opinion, wrote separately to express his "chagrin" that the reversal resulted from the prosecutor's decision to pursue this charge: "Why the prosecutor chose to undertake the burden of proving forcible compulsion – an impossible task on the evidence here – defies explanation." *Id.* at *4 (Shrum, J., concurring).

I recognize that the method of the common law will cause legal principles to migrate and expand somewhat as words and principles encounter new facts. But in the present case the Missouri Supreme Court's application of the sodomy statute represented not the gradual evolution of a principle but a quantum leap that essentially redefined a statutory crime.

I recognize, too, that it is the sole province of the Missouri courts to construe their own statutes and that such constructions as those courts may give them are authoritative and binding on federal courts. We have no appellate jurisdiction over state courts and would not presume to venture an opinion that the interpretation that

the Missouri Supreme Court gave the statute relevant to this case was incorrect as a matter of Missouri law: Indeed, it was correct by definition. The Missouri Supreme Court's interpretation of the statute would remain intact, unaffected by a ruling in favor of the Mr. Niederstadt, and the courts of Missouri would be free to apply that interpretation to any conduct that occurs after the Missouri Supreme Court's ruling in Mr. Niederstadt's appeal. I would hold only that in applying its construction to Mr. Niederstadt, the Missouri Supreme Court violated his right to due process.

Mr. Niederstadt's crime was grievous. Perhaps in some abstract moral sense he got what he deserved. But we are here to do law, not enforce morals, and Mr. Niederstadt's sentence was at least eighteen years longer than it would otherwise have been because of the construction that the Missouri Supreme Court gave to the phrase "forcible compulsion." In any event, Mr. Niederstadt did not get part of what he deserved, namely the due process of law that the Constitution secures for persons accused of crime. The maxim *nulla poena sine lege*, no punishment without a statute, is not a modern innovation intended to maximize the number of miscreants who go unpunished. It is a cherished principle of Anglo-American law, and ought not to be lightly shoved aside.

I would affirm the judgment of the district court.

_____