**STATE of Missouri, Respondent,**

v.

**John Elmer BOYDSTON, Appellant.**

No. 27210.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 23, 2006.

Ellen H. Flottman, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Cecily L. Daller, for respondent.

ROBERT S. BARNEY, Judge.

John Elmer Boydston ("Appellant") was convicted by a jury of the Class C felony of burglary in the second degree, a violation of section 569.170.[1] He was found by the trial court to be a prior and persistent offender pursuant to sections 558.016 and 557.036 and was sentenced to twelve years in the Missouri Department of Corrections. In his sole point on appeal, Appellant maintains the trial court abused it discretion in admitting State's "Exhibit 11," a crowbar purportedly used in the burglary and found at the scene of the crime. Appellant contends the State failed to prove "Exhibit 11" was in fact the same crowbar a witness "saw the burglar carrying in the bar that night ..." or that it was in the same condition as at the time of the burglary. Accordingly, Appellant asserts the "[a]dmission of the crowbar was therefore totally irrelevant and prejudicial to [A]ppellant."

Appellant does not challenge the sufficiency of the evidence to support his con-

---

1. All statutory references are to RSMo 2000.

viction. Viewing the record in the light most favorable to the jury's verdict, *State v. Smith,* 81 S.W.3d 657, 659 (Mo.App. 2002), the record reveals that on July 21, 2003, Appellant was a passenger in his girlfriend's car at the time she was arrested by Officer David Inman ("Officer Inman") for driving away from a gas station without paying for gasoline. Officer Inman testified that Appellant was not arrested in relation to that incident. Officer Inman noted that he allowed Appellant to leave the scene of the arrest and to take a black bag containing "[a] bunch of tattooing equipment" with him when he left.

Later that afternoon, Appellant went to the Plum Crazy Bar ("the Bar") in Hayti, Missouri, which is an establishment owned by Hoot Graue ("Mr. Graue"). Mr. Graue testified that Appellant told him that he was a tattoo artist and that he needed to earn some money to get his girlfriend out of jail. Mr. Graue said that Appellant was still at the Bar when he closed at around 10:00 that evening. After closing the Bar, Mr. Graue set the security alarm and motion detector, locked the doors, and went home.

Shortly after he arrived home, the security alarm company called Mr. Graue and notified him that the alarm at the Bar had been activated. Mr. Graue met Officer Justin Brown ("Officer Brown") at the Bar and they discovered that several tiles had fallen from the ceiling; however, Officer Brown located no one inside the building. Mr. Graue reset the alarm and both Officer Brown and Mr. Graue left the Bar.

According to Mr. Graue, approximately fifteen or twenty minutes later he was again notified by the security alarm company that the alarm at the Bar had been activated. When he returned to the Bar, the police had not yet arrived on the scene. Mr. Graue unlocked the front door and entered the Bar. Mr. Graue saw Appellant standing by the lottery ticket machine holding a crowbar.[2] Appellant said to Mr. Graue, "I'm sorry," and then he approached him with the crowbar in his hand. Mr. Graue grabbed a gun and shot Appellant in the leg. Appellant fell to his knees, dropped the crowbar, and then ran out the back of the building.

When police arrived, they were unable to find Appellant. Inside the Bar, the police discovered some dislodged ceiling tiles; several missing louvers from the rear of the building near where the tiles were missing; the lottery ticket machine had been moved, pried open, and emptied of currency; the juke box had been scratched; the inside bottom corner of the back door was bent upward; a pillar was damaged by the bullet; and a trail of blood led toward the rear door of the building.

At some point in August of 2003, a police officer discovered a black bag full of tattooing equipment in a parking lot across the street from the Bar. The bag was turned over to the Hayti Police Department and it was later claimed by Appellant several months after the burglary.

Appellant presented no evidence at trial. The jury found him guilty of burglary in the second degree and he was sentenced by the trial court to serve twelve years in the Missouri Department of Corrections. This appeal followed.

■ "A trial court has broad discretion to admit or exclude evidence at trial." *State v. Madorie,* 156 S.W.3d 351, 355 (Mo.

2. We note that it does not appear that Mr. Graue specifically identified Appellant as the burglar on the record; however, during his testimony, Mr. Graue stated that he "saw this gentleman here ... over by the machines;" that "the guy that was standing there with the crowbar [was] the same guy that had been in [his] bar earlier;" and that he gave the police a description of the man that "had a tattoo bag with him."

banc 2005) "This standard of review compels the reversal of a trial court's ruling on the admission of evidence only if the court has clearly abused its discretion." *Id.* "We review trial court decisions regarding the admissibility of evidence 'for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.'" *State v. Santillan,* 1 S.W.3d 572, 579 (Mo.App.1999)(quoting *State v. Tokar,* 918 S.W.2d 753, 761 (Mo. banc 1996)).

As previously mentioned, in his sole point relied on Appellant asserts the trial court abused its discretion in admitting State's "Exhibit 11" into evidence. Specifically, Appellant asserts that the State

> failed to prove that the crowbar was the same one Mr. Graue saw the burglar carrying in the bar that night or that it was in the same condition, since it was never seized by the police but instead they asked Mr. Graue to produce it a week before trial, approximately two years after the burglary. ·

According to Appellant, the admission of "Exhibit 11" into evidence was not only prejudicial to Appellant but was also "totally irrelevant."

At trial, during direct examination, Mr. Graue testified that he or his son had picked up the crowbar after the burglary and had kept it at the Bar until he was contacted by the police a few weeks prior to trial. When the State showed the crowbar to Mr. Graue, defense counsel objected "to this piece of evidence." The trial court overruled defense counsel's objection by noting that "Exhibit 11" "hasn't been offered [into evidence] yet."

A short time later, when the State actually offered "Exhibit 11" into evidence, defense counsel again objected. The trial court ruled that it would "allow the defense to question Mr. Graue on it before [it] rule[d] on its admissibility." As such, following cross-examination of Mr. Graue,

the State again offered "Exhibit 11" into evidence. At that time defense counsel stated, "We object on the grounds of lack of foundation." The objection was overruled by the trial court and "Exhibit 11" was admitted into evidence.

Thereafter, in his "Motion for Acquittal or in the Alternative for a New Trial," filed after his conviction, Appellant argued that the trial court erred in admitting "Exhibit 11" because "the foundation testimony did not provide reasonable assurances that the item was the item it purports to be, nor did it provide reasonable assurances that the item had not been tampered with or substituted." This motion was overruled by the trial court.

 " 'To preserve an objection to evidence for [appellate] review, the objection must be specific, and the point raised on appeal must be based upon the same theory' " presented at trial. *State v. Brethold,* 149 S.W.3d 906, 909 (Mo.App.2004) (quoting *State v. Driver,* 912 S.W.2d 52, 54 (Mo. banc 1995)). "A general objection to 'lack of foundation' will not preserve alleged errors because it fails to direct the trial court's attention to the specific foundational element considered deficient." *State v. Schuster,* 92 S.W.3d 816, 823 (Mo.App. 2003). "It is incumbent on the objecting party to make the basis of his objection reasonably apparent to the court in order to provide the opponent an opportunity to correct the error and the court to correctly rule on it." *Id.* " 'Missouri courts strictly apply these principles based on the notion that trial judges should be given an opportunity to reconsider their prior rulings against the backdrop of the evidence actually adduced and in light of the circumstances that exist when the questioned evidence is actually proffered.'" *State v. Jordan,* 181 S.W.3d 588, 594 (Mo.App. 2005) (quoting *State v. McCullum,* 63 S.W.3d 242, 259 (Mo.App.2001)).

■ In the present matter, defense counsel's sole objection to the admission of "Exhibit 11" was that he "object[ed] on the grounds of lack of ... foundation." Defense counsel made no other arguments relating to why the exhibit lacked foundation nor did he elaborate at all on the grounds for his objection. Without a specific objection calling the attention of the trial court to the particular grounds or reason for the objection, Appellant's foundational argument was not preserved for appellate review. *Schuster*, 92 S.W.3d at 823. By failing to properly and specifically object to the receipt into evidence of "Exhibit 11," Appellant has waived this claim of error.

Additionally, Appellant has failed to preserve this issue for review because his theory on appeal is different from the objection he asserted at trial. *See State v. Phillips*, 939 S.W.2d 502, 505 (Mo.App. 1997) (holding that "[t]he grounds asserted on appeal are limited to those stated at trial ...;" accordingly, an appellant "cannot rely on a theory different from the one offered at trial"). Here, as best we discern, Appellant is apparently arguing not only that there was no chain of custody established by the State, but also that the crowbar was "irrelevant" evidence. These issues were not raised in the trial court below and they are not preserved for our review. *Id.*

■ As Appellant has failed to preserve his objection to the admission of the crowbar, discretion rests with this Court to review the contention for "plain error" under Rule 30.20.[3] Plain error review is used sparingly. *State v. Ballard,* 6 S.W.3d 210, 214 (Mo.App.1999) Under Rule 30.20, this Court first "determine[s] whether the claim for review facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted, or in other words, whether, on the face of the claim, plain error has, in fact occurred." *State v. Dudley,* 51 S.W.3d 44, 53 (Mo.App.2001) (internal citations omitted). If facially substantial grounds are found to exist, we then determine whether manifest injustice or a miscarriage of justice has actually occurred. *State v. Rogers,* 51 S.W.3d 879, 880 (Mo. App.2001). Rule 30.20 "'makes it clear that not all prejudicial error—that is, reversible error—can be deemed plain error.'" *Id.* (quoting *State v. Dowell,* 25 S.W.3d 594, 606 (Mo.App.2000)).

■ Here, we decline to review Appellant's contentions for plain error. It has long been held that trial courts are granted broad discretion in admitting or excluding evidence at trial. *Madorie,* 156 S.W.3d at 355. As such, this Court defers to the trial court's decision to admit "Exhibit 11," the crowbar, into evidence and we find the trial court did not abuse its discretion in so doing. We do not discern that on the face of Appellant's claim that plain error has, in fact occurred, much less a manifest injustice or miscarriage of justice. *See Dudley,* 51 S.W.3d at 53. Point denied.

■ Finally, we note that Appellant was charged as a prior and persistent offender pursuant to sections 558.016 and 557.036. Prior to trial, the trial court found that beyond a reasonable doubt "[e]vidence [was] adduced as to [Appellant's status] as a prior and persistent offender." At Appellant's sentencing hearing, the trial court announced that it was sentencing Appellant according to his prior and persistent offender status. However, the written judgment and sentence fails to reflect that finding. "The failure to memorialize accurately the decision of the trial court as it was announced in open court was clearly a clerical error."

---

3. All rule references are to Missouri Court Rules (2006).

*State v. Taylor*, 123 S.W.3d 924, 931 (Mo. App.2004) "Rule 29.12 permits a trial court to correct such clerical errors in the judgment that obviously are a result of oversight or omission." *State v. Booyer*, 87 S.W.3d 926, 931 (Mo.App.2002). Accordingly, we affirm Appellant's conviction and sentence, but remand this case with instructions to the trial court to enter a written judgment reflecting Appellant's prior and persistent offender status.

The judgment of the trial court is affirmed.

GARRISON, J. and LYNCH, J., concur.