STATE of Missouri, Plaintiff–
Respondent,

v.

Frankie J. GOINS, Defendant–
Appellant.

No. SD 29130.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 10, 2010.

Rehearing Denied March 3, 2010.

Application for Transfer Denied
April 20, 2010.

John M. Albright, Poplar Bluff, MO, for Appellant.

Chris Koster, Attorney General, and Jamie Pamela Rasmussen, Assistant Attorney General, Jefferson City, MO, for Respondent.

DON E. BURRELL, Judge.

Appellant Frankie J. Goins ("Defendant") was charged with the class C felony of stealing by deceit pursuant to section 570.030.[1] The case was tried to a jury. At the close of the evidence, the jury was instructed on both the charged offense and a lesser charge of statutory "substantial step" attempt to commit stealing by deceit pursuant to section 564.011, RSMo 2000. After deliberation, the jury entered a verdict finding Defendant guilty of the lesser offense (punishable as a class D felony) and assessing a punishment of "no imprisonment, but a fine, in an amount to be determined by the court." After denying Defendant's post-trial motion for judgment of acquittal and alternative motion for a new trial, the trial court entered a judgment imposing a $3,500 fine.

Defendant now appeals that judgment in a single point relied on that asserts the trial court erred when it overruled Defendant's objections to cross-examination questions the prosecutor asked Defendant's character witnesses.[2] Because De-

---

1. Unless otherwise noted, all statutory references are to RSMo Cum.Supp.2009, and all rule references are to Missouri Court Rules (2009).

2. Defendant's point relied on reads as follows:
 The trial court erred in overruling the Appellant's objections and allowing the prosecution to cross-examine character witnesses about alleged immoral conduct in that, upon the Appellant's objection, the Prosecution was required to show some factual basis for the rumored immoral conduct and the law requires the questions be couched in terms of rumors rather than

facts because, in this case, the Prosecution never supplied and nowhere in the record is there evidence to support the alleged immoral conduct and the questions were not couched in terms of rumors but stated as detailed factual recitations from matters not in evidence.

The dissent's position that "facts not in evidence" is a sufficient objection to the form of the questions asked by the prosecutor is, unfortunately, not an argument Defendant chose to make either to the trial court below in his motion for a new trial or to this court on appeal. Defendant's brief simply did not ad-

fendant's claim of error was not properly preserved for our review, we affirm.

## Facts

We view the evidence in the light most favorable to the verdict. *State v. Collier*, 892 S.W.2d 686, 688 (Mo.App. W.D.1994). Viewed in that light, the evidence was that while working as an officer for the Malden Police Department, Defendant took $1,000 from a teenager ("Victim") who had been caught up in a scam involving the selling of stolen trading cards related to an online computer game. Victim had contacted the police to report the trading card scheme. A few days later, Defendant called Victim and asked him to bring to the police station the money he had received as a result of his participation in the trading card scam. Defendant told Victim the police needed the money in connection with their investigation. After Victim told his stepfather what Defendant had asked him to do, Victim's stepfather notified the Chief of Police, Jarrett Bullock ("Chief Bullock"), that Defendant's request sounded "fishy" to him. Chief Bullock passed stepfather's concerns along to the Highway Patrol, which arranged for Victim to take $1,000 in cash to Defendant in order to see what Defendant would then do with the money.

The exchange of the money was videotaped by means of a recording device placed on Victim prior to his meeting with Defendant. That videotape was later played for the jury. Upon receiving the money, Defendant did not give Victim a receipt, did not count the money, and did not open a case file. Defendant also put the money in his own personal locker instead of placing it in the police station's evidence locker. At the end of Defen-

dant's shift, William "Bud" Cooper, a supervising sergeant over the Criminal Unit of the Highway Patrol's Troop E, was waiting for Defendant as he left the police station and confronted Defendant about his actions.

At trial, Defendant testified in his own defense after first presenting the testimony of two law enforcement officers who testified that Defendant had a good reputation in the community for "truthfulness and honesty." The relevant portions of the character witnesses' testimony occurred as follows:

[Defendant's direct examination of first witness]

Q. You've known [Defendant] for about six years?

A. Yes, sir.

Q. And had some common interests with him?

A. Yes, sir.

Q. Are you aware of his reputation for truthfulness and honesty in the Southeast Missouri area?

A. Yes, sir, I am.

Q. And what is your understanding for [sic] his—of his reputation for truthfulness and honesty? Tell the jury.

A. It's always been excellent.

On cross-examination, the prosecutor asked the witness the following questions and received the following answers:

Q. And are you aware that [Defendant] was a police officer in the City of Morehouse?

A. Yes, sir.

Q. And were you aware while he was a police officer at the City of Morehouse he was accused of stealing bond money.

dress the threshold question of the sufficiency of his trial objections. Then, when the State raised the issue in its brief by asserting that they were deficient, Defendant made no reply.

We continue to believe that addressing the matter, *sua sponte,* would take this court outside its proper role.

A. No, sir.

[Defendant's counsel]: Objection, Your Honor. That's improper cross-examination.

THE COURT: Overruled. He may answer.

Q. You weren't aware of that?

A. No, sir, I was not.

Q. That he then made restitution for that bond money that went missing while it was—

[Defendant's counsel]: Would you—

Q. —in his custody?

[Defendant's counsel]:—show this objection to be a continuing objection for the record[?]

THE COURT: It may.

[Defendant's counsel]: Plus he's assuming facts not in evidence. There's no evidence of this whatsoever.

THE COURT: The objection will be continuing.

Q. I said—

A. No, sir.

Q. —that he made restitution for this bond money that went missing while in his custody?

A. No, sir, I wasn't aware of that.

Q. Would that change your opinion at all about him and his reputation had you known that?

A. I'd have to—I'd have to know a lot more about the source of the credibility of the information. It could change it but I don't know what that's based on.

Q. Were you aware he was also employed in the City of Bloomfield as an officer.

A. Yes. Yes, sir.

Q. And while he was here in the City of Bloomfield as an officer that he refused to pursue a theft report after re-

covering the property and returning it to the owner despite the fact the owner—

[Defendant's counsel]: Judge, same objection. There's no evidence of this and it's improper cross-examination of this officer. [ [3] ]

THE COURT: Based on the Court's understanding of the law, the objection is overruled. Proceed.

[Prosecutor]: Thank you, Your Honor. If [Defendant's counsel] wants to make that continuing as well, I don't have any objection.

[Defendant's counsel]: Yes, I would ask that.

THE COURT: It will be continuing.

Q. And that this stolen four-wheeler was returned to the owner and he refused to pursue the matter because the person who had stolen it was a friend of his?

A. I wasn't aware of that, no, sir.

Q. And again, had you known that, would that change your opinion of his reputation?

A. Once again, I mean, if that was proven to be a true fact, it would but I don't know what it's based upon.

Q. That another officer pursued that and, in fact, the person that took the four-wheeler that he refused to pursue was charged and convicted with that offense[?]

A. Okay. No. I wasn't aware of that, though, sir.

Q. You think those are significant, those incidents, would be significant insofar as somebody's reputation for being an honest and law-abiding person?

A. Yes, sir. I mean, if they were true. I don't know that that would help them any.

3. The witness was a corporal with the High- way Patrol.

The second witness testified on direct examination as follows:

Q. Do you know [Defendant] that's [sic] seated over there?

A. Yep.

Q. How long have you known [Defendant]?

A. Me and [Defendant] has [sic]—we went to school together from grade school until senior high, knowed [sic] each other about—practically all of our lives.

Q. Kept up with each other over the years?

A. We have seen one another on acquaintances [sic] after school, yes.

Q. Are you familiar with his reputation in Southeast Missouri for truthfulness and honesty?

A. Yes.

Q. Would you tell the jury what his reputation is for being a truthful and honest person?

. . . .

A. Excellent.

In response to this testimony, the prosecutor conducted the following cross-examination:

Q. Now, sir, are you aware that in November of 2003 that [Defendant] wrote a traffic ticket and took a cash bond in the City of Morehouse when he was working there?

[Defendant's counsel]: Your Honor, I'm going to object that *this question is improper cross-examination for a character witness.* There's [sic] no facts in evidence. It's totally improper. And that's my objection. [ (emphasis added) ].

THE COURT: All right. Overruled. He may answer.

Q. And then failed to turn in that bond money, that the bond receipt was signed in the name of a fictitious person by the name of Joe Griffin who had never worked and was never heard of by anybody in the City of Morehouse and that when the matter was brought up and [Defendant] was confronted about it he paid the $70 back; are you aware of that?

A. No, sir.

Q. Okay. Had you known that, would that change your opinion of him?

A. It would have to be proved for me—for me to understand it.

Q. And are you aware further that a Ron Alsup had his—on April 24th, 2003 when [Defendant] was an officer with the police department in the City of Bloomfield that he received a report with respect to the theft of a four-wheeler and trailer, that he located the trailer and contacted the victim and returned it to him and when the victim, Mr. Alsup, indicated he wanted to pursue further the matter and prosecute it that [Defendant] refused to do so and that subsequently, a Justin Bell[,] who was a volunteer fireman who was a friend of [Defendant][,] was charged with that theft and the trailer, in fact, was subsequently recovered by the—Deputy Patrick Barbour and Deputy Keith Haynes recovered that from [Defendant]'s friend?

[Defendant's counsel]: Same objection, Your Honor.

THE COURT: Overruled.

Q. Are you aware of that incident?

A. Sir, I don't keep up with people's records. This here [sic] is foreign to me, what you're talking about.

Q. I understand that, sir. And I guess my question is: Had you known that, would your thoughts about his reputation be different?

A. As I said a while ago, I've known [Defendant] for—I think most of us is

[sic] probably 36. He may be a little older than I am. All I've knowed [sic] of [Defendant] has been a good person [sic].

Q. And my question to you, sir, again, let me just try and make sure you understand: Had you known that information, would your opinion about his reputation; that is, what other people might think of him, be different?

A. No.

### Standard of Review

"Ordinarily, 'we review trial court decisions regarding the admissibility of evidence for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.'" *State v. White*, 230 S.W.3d 375, 378 (Mo.App. S.D.2007) (quoting *State v. Johnson*, 161 S.W.3d 920, 924 (Mo.App. S.D.2005)). Trial courts have broad discretion in controlling the scope of cross-examination. *Collier*, 892 S.W.2d at 690.

### Discussion

 "A criminal defendant has a right to be tried only for the crimes with which he is charged." *State v. Davis*, 211 S.W.3d 86, 88 (Mo. banc 2006). The general rule is that "evidence of prior misconduct is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes." *Id.* However, "[a]fter the defendant has voluntarily put his character in issue it is competent for the prosecution to meet the issue thus presented by evidence of bad reputation." *State v. Crow*, 107 Mo. 341, 17 S.W. 745, 746 (1891). "By volunteering information regarding his good character, a defendant invites inquiry into mere arrests or investigations not resulting in conviction." *Collier*, 892 S.W.2d at 690.

 "The rule in this state is that a witness to defendant's good reputation may be cross-examined as to the facts of prior arrests or rumors of misconduct of the defendant, not to establish the truth of those facts or rumors, but to test the credibility of the witness and to ascertain what weight should be given to his testimony." *State v. Burr*, 542 S.W.2d 527, 532 (Mo.App.Spfld.D.1976); *accord State v. Sweet*, 796 S.W.2d 607, 614 (Mo. banc 1990). "The prosecution is authorized to cross-examine a defense witness about alleged prior acts of misconduct on the part of the defendant if the state acts in good faith." *State v. Brooks*, 960 S.W.2d 479, 494 (Mo. banc 1997). "How the question is framed is a factor to be considered when determining whether the question is to test the witness's credibility or has, as its purpose, to improperly show other crimes or collateral details." *State v. Creason*, 847 S.W.2d 482, 487 (Mo.App. W.D.1993). "A court will not presume that the prosecution acted in bad faith." *Brooks*, 960 S.W.2d at 494.

"Couching the question in terms of personal knowledge has been criticized and prohibited." *Creason*, 847 S.W.2d at 487. "'Were you aware' and 'did you know' requests personal knowledge of the witness and implies the matter inquired of as a fact when this introduction is followed by '... of the fact....'" *Id.* at 488. "The preferred method of asking the question is, 'have you heard ...'" rather than 'did you know.'" *Id.*

Defendant relies on *Creason* in arguing that the specific objections he lodged at trial put the court on notice that: 1) Defendant was challenging whether the prosecutor had a good-faith basis for asking his questions; and 2) that the questions addressed as fact what should have been couched as rumor.

 To properly preserve a matter for appellate review, the trial objection

" 'must be specific, and the point raised on appeal must be based upon the same theory' presented at trial." *State v. Boydston,* 198 S.W.3d 671, 674 (Mo.App. S.D.2006) (quoting *State v. Brethold,* 149 S.W.3d 906, 909 (Mo.App. E.D.2004)). "It is incumbent on the objecting party to make the basis of his objection reasonably apparent to the court in order to provide the opponent an opportunity to correct the error and the court to correctly rule on it." *Boydston,* 198 S.W.3d at 674 (quoting *State v. Schuster,* 92 S.W.3d 816, 823 (Mo.App. S.D. 2003)).

■ "Missouri courts strictly apply these principles based on the notion that the trial judges should be given an opportunity to reconsider their prior rulings against the backdrop of the evidence actually adduced and in light of the circumstances that exist when the questioned evidence is actually proffered." *Boydston,* 198 S.W.3d at 674. "Error is not preserved where the basis for the specific objection is 'not readily apparent.' " *Brethold,* 149 S.W.3d at 909 (quoting *Schuster,* 92 S.W.3d at 821). For example, in *Brethold,* the defense's standing "objection to any hearsay statements based on the same arguments we made to the 491 hearing" did not adequately preserve defendant's later argument that the statements "amounted to improper bolstering and cumulative evidence." 149 S.W.3d at 909.

■ Here, Defendant's first objection was that the prosecutor's question constituted "improper cross-examination." This general objection provided the trial court with no specific legal reason why Defendant believed the question was improper and was for that reason ineffective in preserving anything for appellate review. *See Id.; State v. Cummings,* 134 S.W.3d 94, 108 n. 7 (Mo.App. S.D.2004) ("Nothing is preserved for appellate review when the assignments of error ... on appeal are

enlargements of a general objection made at the time of trial."); *e.g., State v. Irby,* 254 S.W.3d 181, 194 (Mo.App. E.D.2008) (holding that a general objection to foundation preserves nothing for appellate review).

■ Defendant's second objection was that the prosecutor's question "assume[ed] facts not in evidence." The problem with this objection is that every witness who testifies about a defendant's character or reputation will be speaking about facts not in evidence. "The general rule in Missouri, from which we do not deviate or retreat, is that the State may cross-examine a character witness with reference to defendant's prior arrests and accusations of specific misconduct for the purpose of testing the trustworthiness, knowledge and good faith of the witness." *State v. Siems,* 535 S.W.2d 261, 264 (Mo. App.St.L.D.1976). "In such cross-examination the State may inquire into mere rumors concerning the character of the defendant." *Id.* Because these rumors or prior arrests never involve conduct for which the defendant is currently on trial they—by their very nature—are not based on evidence already presented in the case. Because Defendant's specific objection would also have been true of a properly asked question, the trial court did not err in overruling it.

■ Defendant's third objection, "There's no evidence of this and it's improper cross-examination of this officer[,]" repeated the defective "no prior evidence" ground, added the insufficient "improper cross-examination" ground, then threw in an additional reference to the fact that the witness was a law enforcement officer. Nothing in this third objection put the trial court on notice that Defendant's complaint was what he now asserts on appeal.

It is not until Defendant makes his first objection to the prosecutor's cross-examination of Defendant's second character witness—"I'm going to object that *this question is improper cross-examination for a character witness*" [emphasis added]—that the trial court was informed that Defendant's objections had something to do with the fact that the witness was testifying about Defendant's reputation for truthfulness. Even then, the objection did not address the specific complaints Defendant now raises on appeal. "A point on appeal must be based upon the theory voiced in the objection at trial and a defendant cannot expand or change on appeal the objection as made." *State v. Cannady*, 660 S.W.2d 33, 37 (Mo. App. E.D.1983). "The purpose of the specific objection requirement is so that the trial court can make a 'reasoned and informed ruling.'" *Irby*, 254 S.W.3d at 189 (quoting *State v. Hoy*, 219 S.W.3d 796, 809 (Mo.App. S.D.2007)).

In *Creason*, the case Defendant principally relies upon, the reviewing court found that the objections lodged by the defendant at trial specifically included complaints that the prosecutor lacked a good-faith basis to ask his questions and that the questions asked were offered to prove that the defendant had committed the referenced offenses, not to test the credibility of the witness. 847 S.W.2d at 486. In the instant case, none of Defendant's trial objections raised these specific complaints. Because specific objections on the same grounds now asserted on appeal were not made to the trial court, the alleged errors were not properly preserved for our review.[4] "[T]his court will not convict a trial court of error on a ground not presented to that court." *State v.*

*Shifkowski*, 57 S.W.3d 309, 315 (Mo.App. S.D.2001) (citing *State v. Henderson*, 954 S.W.2d 581, 585 (Mo.App. S.D.1997)); *see Irby*, 254 S.W.3d at 189.

Even if we assumed, *arguendo*, that Defendant's trial objection of "improper cross-examination for a character witness" was sufficiently specific, "a party must make a timely objection to preserve an issue for appellate review." *White*, 230 S.W.3d at 378. Here, this particular objection came well after similar questions had already been asked of Defendant's first character witness. Moreover, "[i]f for some reason the objection is untimely, then the answer should be reached by a motion to strike." *State v. Evenson*, 35 S.W.3d 486, 492 (Mo.App. S.D.2000) (quoting *State v. Woolford*, 545 S.W.2d 367, 372 (Mo.App.K.C.D.1976)); *see Cannady*, 660 S.W.2d at 37. "In the absence of a motion to strike or withdraw, the question of admissibility is not reviewable." *Evenson*, 35 S.W.3d at 492 (citing *Yaeger v. Olympic Marine Co.*, 983 S.W.2d 173, 186 (Mo.App. E.D.1998)). Defendant made no such request.

By failing to lodge a timely, specific objection to the State's questions at trial on the same grounds now asserted on appeal, Defendant has waived his claim of error. *See Boydston*, 198 S.W.3d at 675. The judgment of conviction is affirmed.

SCOTT, C.J., dissents in separate opinion.

LYNCH, P.J., concurs.

DANIEL E. SCOTT, Chief Judge, dissenting.

Defendant's complaint that the State did not "show some factual basis for the ru-

---

4. In reaching this conclusion, we do not approve the form of the questions asked by the prosecutor. The vast majority of them were asked in the disfavored form of "did you know" instead of the approved "have you heard."

mored immoral conduct" comes too late. The State may have had such proof—the excessive and collateral detail of some of its questions sounds like a report being read [1]—and if so, could have shown it had Defendant so objected.

I would reverse and remand, however, because the cross-examination was improper. Defendant's second and subsequent objections, while not perfect, were adequate in my opinion. I think they should have been sustained, and when they were not, the State "piled on" to Defendant's prejudice in a thin case.

The general rule limits cross-examination of character witnesses to *rumors* or *reports* of a defendant's misconduct, not the witness's personal knowledge of particular facts. *State v. Creason*, 847 S.W.2d 482, 488 (Mo.App.1993)(citing *State v. Carroll*, 188 S.W.2d 22, 23–24 (Mo.1945)). "Thus, the form of the question about other acts of misconduct is important." *Id.* (citing *State v. Siems*, 535 S.W.2d 261, 264 (Mo.App.1976)). "The inquiry must be directed to rumors or reports concerning the defendant's character, and not be of the 'don't you know' type." *Id.* (citations omitted). Here, the prosecutor asked at least *thirteen* questions of the latter sense,[2] then compounded some of these errors by reciting follow-up details after the witness denied knowledge of the matter. *See Siems*, 535 S.W.2d at 264 (criticizing persistent questioning of witnesses, who had denied hearing the rumors, as being argumentative, collateral, and prejudicial).

By treating their subject matter as fact, the State's inquiries violated the allowable purpose of cross-examination. *Creason*, 847 S.W.2d at 488 (citing *Hawley v. Merritt*, 452 S.W.2d 604, 610 (Mo.App.1970)). It is improper to phrase cross-examination questions " 'so as to assume as fact matters of which there is no evidence.' " *Id.* (quoting *Hawley, supra* ). Cross-examination should not covertly prejudice a defendant in the minds of jurors "by a recital as facts of supposed matters not appearing in the evidence and wholly outside of the case." *Id.* (quoting *State v. Selle*, 367 S.W.2d 522, 530 (Mo.1963) and *Pittman v. U.S.*, 42 F.2d 793, 797 (8th Cir.1930)). As the principal opinion shows, the State's questions "were asked in such a manner as to imply the facts had been established," and "transcended the limits of cross-examination" of Defendant's character witnesses. *Id.*

As I understand it, the court and I agree these questions were improper, and disagree only on whether those improprieties are preserved for appellate review. I think the "facts not in evidence" objections were adequate because, per *Creason,* it was the State's insinuation of crooked and improper actions not in evidence that was killing Defendant at trial. Those inquiries, as phrased, *did* assume facts not in evidence and were objectionable on that basis. Had they been couched (or rephrased

---

**1.** For example:

Q. And are you aware further that a Ron Alsup had his—on April 24th, 2003 when [Defendant] was an officer with the police department in the City of Bloomfield that he received a report with respect to the theft of a four-wheeler and trailer, that he located the trailer and contacted the victim and returned it to him and when the victim, Mr. Alsup, indicated he wanted to pursue further the matter and prosecute it that [Defendant] refused to do so and that subsequently, a Justin Bell[,] who was a volunteer fireman who was a friend of [Defendant][,] was charged with that theft and the trailer, in fact, was subsequently recovered by the—Deputy Patrick Barbour and Deputy Keith Haynes recovered that from [Defendant]'s friend?

**2.** Five "had you known ..." and eight "are you aware ..." or "were you aware...."

after objection) in terms of rumor, the objections may not have been good. Since they were not so phrased, "facts not in evidence" was one of several appropriate objections, and as *Creason* explains, went to the heart of the prejudice.

I respectfully dissent.