

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION TWO</u>

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED108951 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Franklin County |
| v. | ) | |
| | ) | |
| CHARLES K. KING, | ) | Honorable Ted C. House |
| | ) | |
| Defendant/Appellant. | ) | Filed: May 4, 2021 |

<u>Introduction</u>

Charles K. King (Appellant) appeals from the trial court's judgment following a bench trial finding him guilty of four counts of forcible rape under section 566.030[1], and one count of forcible sodomy under section 566.060.[2] Appellant raises five points on appeal, challenging the trial court's interpretation of the statutes, the sufficiency of the State's evidence, and the admissibility of the State's evidence. We affirm.

<u>Factual and Procedural Background</u>

Viewed in the light most favorable to the verdict, the evidence at trial showed the following[3]:

---

[1] All statutory citations are to RSMo Cum. Supp. 2006 unless otherwise noted.

[2] Codefendant Alvin Hunter (Hunter), tried in conjunction with Appellant, has also appealed the court's judgment.

[3] We note Appellant's brief fails to comply with Rule 84.04. Appellant's statement of facts attempts to discredit M.M. (Victim) and attack her for her alcohol use. Appellant also recites the entirety of the facts in a misleading manner. Not only does Appellant fail to view the facts in the light most favorable to the verdict, Appellant actually attempts to show the falsity of Captain Subke's testimony during his recitation of the facts. In addition, several of

1

Victim, codefendant Hunter's niece by adoption, had a drinking problem during her twenties. Victim frequently visited Appellant and Hunter's house on Highway K in St. Clair, Missouri. She had known Appellant, sometimes referred to as "Kerry," and Hunter for many years prior to the time period in question and believed their house to be a safe place to visit and drink. Significantly, while Victim considered Appellant and Hunter to be her friends, Victim never agreed to engage in sexual behavior with either man and had no recollection of actually doing so.

At some point in 2008, Victim woke up at the codefendants' house and discovered her pants had been pulled down and Hunter was at her feet unbuttoning his pants. Victim immediately jumped up to leave, stating, "Oh, H-E-L-L no." Victim never returned to the house.

Eight years later, Jennifer Rahn (Rahn) moved in with Appellant. In August 2016, Rahn discovered a videotape labeled "Solo" on Appellant's dresser. Having never heard of the movie, Rahn put the video into the VCR player. The video showed Appellant attempting to sexually penetrate an unconscious female. Rahn did not recognize the female and did not know whether the female was unconscious or dead, but Rahn recognized the location as Appellant's living room. Before shutting off the video, Rahn heard Appellant ask another man who was off-camera if he was ready for his turn.

Rahn wrapped the videotape in several shopping bags and trash bags and buried it in the woods behind the house. Three days later, Rahn contacted the Franklin County Sheriff's Department and dug up the video to turn it over to them. Captain Charles Subke (Captain Subke) of the Franklin County Sheriff's Department received the video and watched it in its entirety.

_____

Appellant's points on appeal are not in compliance with Rule 84.04(d), making it far more difficult for us to understand Appellant's claims. Nevertheless, because we strongly prefer to decide criminal cases on the merits, we exercise our discretion and review Appellant's claims. See State v. Johnson, 456 S.W.3d 497, 500 (Mo. App. E.D. 2015).

2

The video showed two men repeatedly having sexual intercourse with a woman who appeared to be passed out. At various points in the video, the men also touched their penises to the woman's mouth, placed their mouths on her vagina, and put their fingers in her vagina. During the video, one of the men stated, "Yeah, this is good ol' Alvin and Kerry f---ing the hell out of [Victim]." Later, one of the men referred to Victim as a "28-year-old-pussy." During one portion of the video, Captain Subke also heard a "60 Minutes" episode playing, which helped him estimate the date of the video.

Captain Subke discovered Victim's identity by searching service call records from Appellant's house and finding a record containing Victim's name. Captain Subke located Victim and showed her still shots from the video. Victim confirmed she was the woman shown in the pictures. Captain Subke also showed Victim still shots of the men in the video and Victim readily identified Appellant and Hunter. Victim stated she had no recollection of any of the events depicted in the video and never consented to sexual behavior with either man.

On September 29, 2016, Appellant was indicted. Subsequently, the State filed a Substitute Information In Lieu of Indictment. After several amendments and motions to dismiss, the case proceeded based upon the State's Fourth Amended Information In Lieu of Indictment, charging Appellant with five counts of forcible rape and one count of forcible sodomy.

Appellant and Hunter waived jury trial and were tried in conjunction by the court. At trial, the State presented testimony from Victim, Detective Corporal Kenneth Nix, Rahn, and Captain Subke. The State also played the video as evidence. Victim testified she never consented to any sexual behavior with Appellant and Hunter. Detective Corporal Nix, of the Clayton Police Department, testified to converting the original VHS tape to DVD. He also stated he did not observe anything that would lead him to believe the original video had been tampered with. Rahn

3

testified she found the videotape in Appellant's house and stored it temporarily by burying it before delivering the videotape to Captain Subke. Captain Subke testified as to how he identified Victim, Appellant, and Hunter. Appellant and Hunter presented testimony from Charles Ryan King (Appellant's son), Captain Subke, Appellant, and Hunter.

Appellant was found guilty on all counts. The court sentenced Appellant to concurrent sentences of 17 years for each count. This appeal follows.

## Points Relied On

Appellant raises five points on appeal. In his first point, Appellant claims the trial court erred by interpreting the forcible rape and sodomy statutes to include incapacity due to voluntary intoxication. In his second point, Appellant argues there was insufficient evidence presented to establish he used physical force that overcame reasonable resistance. In his third point, Appellant claims there was insufficient evidence presented to establish a timeframe for the charged actions. In his fourth point, Appellant argues the trial court erred in denying his Motion to Dismiss because the State's Fourth Amended Information failed to establish all of the elements required under the forcible rape and forcible sodomy statutes. In his final point, Appellant claims the trial court erred in admitting the videotape into evidence.

## Point I

Appellant's first point claims the trial court erred by misinterpreting sections 566.030 and 566.060. Specifically, Appellant contends that at the time of the crime, an individual who was incapacitated due to voluntary intoxication could not be forcibly raped or forcibly sodomized because there could not be forcible compulsion.

*Standard of Review*

Statutory interpretation is a question of law that we review *de novo*. State v. Smith, 595 S.W.3d 143, 145 (Mo. banc 2020). "The primary rule of statutory interpretation is to ascertain the intent of the General Assembly from the language used and to give effect to that intent. To determine legislative intent, words are to be given their plain and ordinary meaning." State v. Whipple, 501 S.W.3d 507, 513-14 (Mo. App. E.D. 2016) (internal quotation marks and citations omitted). However, we will look past the plain and ordinary meaning of a statute when the language is ambiguous or would lead to an illogical result. Townsend v. Jefferson Cty. Sheriff's Dep't, 602 S.W.3d 262, 265 (Mo. App. E.D. 2020). We must interpret statutes to avoid unreasonable, oppressive, or absurd results. Id. Additionally, "[w]e must interpret a statute in context, not reading any portion of the statute in isolation." Id.

*Discussion*

When the charged crimes occurred, the statute defining forcible rape stated:[4]

1. A person commits the crime of forcible rape if such person has sexual intercourse with another person by the use of forcible compulsion. Forcible compulsion includes the use of a substance administered without a victim's knowledge or consent which renders the victim physically or mentally impaired so as to be incapable of making an informed consent to sexual intercourse.

§ 566.030.1.

Similarly, the statute defining forcible sodomy stated:

A person commits the crime of forcible sodomy if such person has deviate sexual intercourse with another person by the use of forcible compulsion. Forcible compulsion includes the use of a substance administered without a victim's knowledge or consent which renders the victim physically or mentally impaired so as to be incapable of making an informed consent to sexual intercourse.

§ 566.060.1.

---

[4] Missouri's forcible rape and forcible sodomy statutes were amended by the legislature in 2013 to expressly include voluntary and involuntary intoxication.

Relying upon the language in the forcible rape and forcible sodomy statutes, Appellant argues forcible compulsion cannot occur when a victim is voluntarily intoxicated. Accordingly, Appellant believes an individual cannot be found guilty of either crime when a victim is voluntarily intoxicated.

Both the forcible rape and forcible sodomy statutes state "[f]orcible compulsion includes the use of a substance administered without a victim's knowledge or consent which renders the victim physically or mentally impaired so as to be incapable of making an informed consent to sexual intercourse." See sections 566.030.1 and 566.060.1. Although the statutes do not explicitly refer to voluntary intoxication or ingestion of any substances rendering the victim impaired, the legislature uses the word "includes," which indicates the legislature's intent to allow what may be considered forcible compulsion to be expanded beyond merely involuntary intoxication or impairment. "Includes" is not a limiting term. Instead, the term indicates an intent to expand. Its use indicates that which follows does not cover the entirety of possibilities. In such a context, as is the case here, "includes" is not exclusive and other forms of impairment beyond involuntary intoxication could also be considered in the context of determining whether there was forcible compulsion.[5] Therefore, by choosing the word "includes," the legislature emphasized its desire to broaden rather than restrict actions that constitute forcible compulsion.

Moreover, because we do not consider sections of a statute in isolation, we find section 556.061(13) to be instructive. Notably, section 556.061(13) defines incapacitated as "that

---

[5] Crucially, Missouri's use of "includes," along with our caselaw, distinguishes Missouri from several other states, such as Minnesota, which have recently interpreted their statutes to allow only involuntary intoxication to be used to satisfy the mental incapacitation element of their forcible rape/sodomy statutes. In those states, the statutes used broad qualifying terms such as "administered to that person without the person's agreement," making it clear their limited definition encompassed all possibilities, including the administration of alcohol. See State v. Khalil, No. A19-1281, 2021 Minn. LEXIS 126, at *11 (Mar. 24, 2021). In contrast, Missouri's statutes in effect at the time did not include broad qualifying terms and instead stated that it includes further examples not necessarily encompassed within the statutory definition of forcible compulsion.

physical or mental condition, temporary or permanent, in which a person is unconscious, unable to appraise the nature of such person's conduct, or unable to communicate unwillingness to an act." The legislature made it clear that an individual is incapacitated when they are unconscious and therefore cannot consent. Similarly, both the forcible rape and forcible sodomy statutes focus upon whether the victim was capable of providing informed consent to sexual intercourse. Considering these sections in context, it is apparent the legislature was focused upon consent as opposed to whether an incapacitated party became unconscious by their own accord.

Appellant's interpretation of the statutes results in an absurd and unreasonable result. According to Appellant, if a victim is incapacitated due to their own voluntary intoxication, they cannot be forcibly raped or forcibly sodomized. This is an entirely unreasonable result that undoubtedly runs counter to the legislature's intent. The legislature was concerned with consent. Distinguishing between voluntary and involuntary intoxication detracts from the focus upon consent and is not what the legislature would have intended. Consequently, in order to avoid an absurd result, we find forcible compulsion can occur while one is incapacitated from voluntary intoxication under sections 566.030 and 566.060.

Point I is denied.

## Point II

Appellant's second point claims the trial court erred in finding him guilty of forcible rape and forcible sodomy because there was insufficient evidence to establish he used physical force sufficient to overcome reasonable resistance, as required by the statutes. Specifically, because it is clear Appellant used force in manipulating Victim's unconscious body, Appellant's argument focuses upon whether Victim reasonably resisted.

"In reviewing the sufficiency of the evidence in a court-tried criminal case, the same standard is applied as in a jury tried case." State v. Niederstadt, 66 S.W.3d 12, 13 (Mo. banc 2002); Rule 27.01(b). We affirm the trial court's judgment if the State presented sufficient evidence from which a reasonable fact-finder could have found each element of the crime beyond a reasonable doubt. State v. Cerna, 522 S.W.3d 373, 378 (Mo. App. E.D. 2017). This Court views all evidence and inferences in a light most favorable to the judgment. Id. We will not reweigh evidence and we will disregard contrary evidence and inferences. Id. "When the facts relevant to an issue are contested, [this Court] defers to the trial court's assessment of the evidence; it is only when the evidence is uncontested that no deference is given to the trial court's findings." Id. Additionally, we give circumstantial evidence the same weight as direct evidence. Id.

*Discussion*

Reasonable resistance "is that which is suitable under the circumstances." State v. Vandevere, 175 S.W.3d 107, 109 (Mo. banc 2005) (internal quotation marks and citations omitted). Here, Appellant argues Victim could not have provided reasonable resistance because she was unconscious due to her voluntary intoxication and therefore, he did not forcibly compel her.

Our analysis is guided by the Missouri Supreme Court's ruling in Niederstadt, 66 S.W.3d 12. In Niederstadt, the defendant was convicted of forcibly sodomizing a 16-year-old girl who was temporarily living in his house. The victim testified to having gone to sleep because she was not feeling well, only to be awoken by a sharp pain caused by the defendant's finger in her vagina. Id. at 14. The Supreme Court found the defendant's acts were undoubtedly acts of

deviate sexual intercourse involving physical force. Thus, the sole question on appeal was whether the defendant's acts of physical force had overcome reasonable resistance so as to constitute forcible compulsion. Id. at 15. The defendant argued the victim did not reasonably resist because she was asleep, and therefore he did not forcibly compel her. Our Supreme Court disagreed, stating when a victim is unconscious, the victim's inability to resist does not benefit the accused and "is an additional factor taken into account in determining if the accused overcame reasonable resistance." Id. at 16. Accordingly, the court held under the totality of the circumstances, sufficient evidence was presented to find the defendant had deviate sexual intercourse through the use of forcible compulsion. Id. Furthermore, our Supreme Court has previously found a defendant guilty of rape, then defined as "forcibly ravishing any woman," when the defendant penetrated a sleeping woman without consent. State v. Welch, 89 S.W. 945, 947 (Mo. 1905). The court explained a woman could not resist while asleep and any resistance after the act had already commenced could not undo the act. Id. "In other words, the court equated unconsented penetration of a sleeping woman with *forcible* rape." Niederstadt v. Nixon, 505 F.3d 832, 838 (8th Cir. 2007) (analyzing State v. Welch).[6]

Significantly, as explained in Niederstadt, we consider the totality of the circumstances to determine if the force used was sufficient to overcome reasonable resistance. Among the factors we consider, the following are particularly relevant here: the extent to which the defendant was

---

[6] Following our Supreme Court's decision, Niederstadt petitioned for a federal writ of habeas corpus. See Niederstadt v. Nixon, 505 F.3d 832 (8th Cir. 2007). Niederstadt argued the Missouri Supreme Court's ruling that forcible compulsion and reasonable resistance can occur while a victim is asleep violated his right to due process because the decision was "unexpected and indefensible." Id. at 836. Analyzing previous Missouri caselaw, the Eighth Circuit denied Niederstadt's petition, stating "it was neither unexpected nor indefensible for the Supreme Court of Missouri to construe the Missouri rape and sodomy statutes in effect when Niederstadt committed his offense as applying to the unconsented penetration of a sleeping woman, just as the Court had applied prior rape statutes for a century, consistent with the general, if not universal, rule." Id. at 838.

9

in a position of authority, domination, and control over the victim; and whether the victim was under duress. Niederstadt, 66 S.W.3d at 15.

Here, based on the totality of the circumstances, a reasonable fact-finder could have found Appellant used force which overcame reasonable resistance. First, similar to Niederstadt, Victim was unconscious during the sexual acts. "The reasonable resistance expected of an unconscious or sleeping person is extremely low and is all the more easily overcome by a sexual assailant." Niederstadt, 66 S.W.3d at 16. Accordingly, the resistance required by Victim was lower than in situations where a victim is awake and able to resist. "[T]he inability to resist does not inure to the benefit of the accused. Rather, it is an additional factor taken into account in determining if the accused overcame reasonable resistance." Id.

The evidence established Appellant was in a position of authority, domination, and control over Victim. Victim was unconscious and could not take care of herself, and Appellant was acting as her caretaker. Victim had a drinking problem and relied upon Appellant and Hunter to provide her with a safe place to drink. Appellant testified he and Hunter were purposefully quiet and tiptoed around while Victim was unconscious so as not to awaken her. The video and codefendants' statements also reveal they used a camera to record the two-hour incident, which they concealed any time they thought Victim might wake up. These are indicators of the level of control Appellant exerted to minimize Victim's ability to resist.

Victim was also under great duress. As the Southern District found in Lopez-McCurdy, a victim's alcohol-impaired condition is a factor contributing to her duress and her ability to reasonably resist the physical force applied against her. 266 S.W.3d 874, 878 (Mo. App. S.D. 2008). Here, Victim's intoxication was so severe that when Rahn viewed the video, she was unsure whether Victim was unconscious or dead. Moreover, due to her severe alcohol

10

intoxication, Victim was unconsciously coughing and choking. Appellant even recognized the seriousness of Victim's condition at one point in the video, propping her up after Hunter said she was choking. Nonetheless, Appellant still continued to sexually assault Victim. Accordingly, the facts establish Victim was under significant duress.

In light of the totality of the circumstances including the extent to which Appellant was in a position of authority, domination, and control over Victim, and the duress Victim was under, we hold the State presented sufficient evidence to establish Appellant used physical force sufficient to overcome reasonable resistance by Victim.

Point II is denied.

## Point III

Appellant's third point claims there was insufficient evidence to establish a timeframe for the charged crimes. Appellant argues the State failed to provide any evidence other than speculation and hearsay regarding the timeframe for the charged crimes.

### *Standard of Review*

As previously stated in Point II, we will affirm the trial court's judgment if the State presented sufficient evidence from which a reasonable fact-finder could have found each element of the crime beyond a reasonable doubt. Cerna, 522 S.W.3d at 378. Additionally, "[r]easonable inferences can be drawn from both direct and circumstantial evidence, and circumstantial evidence alone can be sufficient to support a conviction." State v. Peeler, 603 S.W.3d 917, 920 (Mo. App. E.D. 2020) (internal quotation marks and citations omitted).

11

*Discussion*

Appellant argues the only evidence presented to establish a timeframe for the crimes was a statement made by one of the codefendants that Victim was 28 years old and a "60 Minutes" episode playing in the background of the video, which constituted speculation and hearsay.

When the State charges a crime within a specific date range, evidence must be presented showing the crime occurred within that timeframe. State v. Bennish, 479 S.W.3d 678, 685 (Mo. App. E.D. 2015). Here, Appellant was charged within a specific timeframe, from May 31, 2007, to July 31, 2008.

In the video, one of the codefendants can be heard stating how they don't normally have sex with a 28-year-old woman.[7;8] As Hunter's niece by adoption, Hunter had known Victim all her life and Appellant had known Victim for many years. Therefore, the trial court could have reasonably inferred the codefendants knew her age. Victim turned 28 on May 31, 2007, and was 28 years old during the majority of the charged timeframe.

Additionally, while Victim did not know when the video was made, she did provide a rough timeframe for when she frequented Appellant's house. Victim testified she did not visit Appellant's house before her daughter was born in 2006 because the first time she drank with Appellant and Hunter, her daughter was present. Victim also testified to having never gone back to the house after she woke up to find Hunter unbuttoning his pants after having pulled her pants down. Victim stated she believed the incident occurred around 2008. Accordingly, Victim's own testimony supports the charged timeframe.[9]

---

[7] According to the testimony and the record, at the time of the trial both codefendants were in their mid-to-late sixties.

[8] The statement was made by one of the codefendants, a party opponent, and does not constitute hearsay. State v. Eisele, 414 S.W.3d 507, 514 (Mo. App. E.D. 2013).

[9] While Appellant emphasizes there were at least two different times of recording, this does not change the fact that all instances were alleged within the charged timeframe and sufficient evidence existed for the trial court to find the events occurred within that timeframe.

The trial court had sufficient circumstantial evidence to reasonably infer the crimes occurred between May 31, 2007, and July 31, 2008. Under our deferential standard of review, we will not second-guess the trial court's decision as it is supported by sufficient evidence. See Bennish, 479 S.W.3d at 685.

Point III is denied.

Point IV

Appellant's fourth point claims the trial court erred by failing to grant his Motion to Dismiss. Specifically, Appellant argues the State's Fourth Amended Information failed to clearly state the essential facts constituting the elements of the forcible rape and forcible sodomy charges.

*Standard of Review*

"We review the trial court's ruling on a motion to dismiss a criminal charge for an abuse of discretion." State v. Metzinger, 456 S.W.3d 84, 89 (Mo. App. E.D. 2015). An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. State v. Rodgers, 396 S.W.3d 398, 400 (Mo. App. W.D. 2013) (internal quotation marks and citations omitted). "However, whether an information fails to state an offense is a question of law, which we review de novo." Metzinger, 456 S.W.3d at 89.

*Discussion*

"The purpose of an information is to inform the accused of charges against him so that he may prepare an adequate defense and to prevent retrial on the same charges in case of an acquittal. Generally, it is enough to charge the offense in the language of the statute alleged to be violated if the statute sets forth all the constituent elements of the offense." State v. Allen, 905

13

S.W.2d 874, 879 (Mo. banc 1995) (internal quotation marks and citations omitted). Appellant's challenge reiterates his claim that he could not be convicted of forcible rape or forcible sodomy because Victim could not have reasonably resisted as required to satisfy forcible compulsion under both statutes. We have already addressed these challenges at length. Victim reasonably resisted and Appellant forcibly compelled Victim, satisfying these elements of the forcible rape and forcible sodomy statutes.

To the extent Appellant is solely challenging whether the State plainly, concisely, and definitely stated the essential facts constituting the elements of forcible rape and forcible sodomy, we hold the trial court did not abuse its discretion in denying Appellant's Motion to Dismiss. The information referenced the relevant statutes and tracked their language sufficiently, informing Appellant of the charges against him and providing him with the ability to prepare an adequate defense. See State v. Rohra, 545 S.W.3d 344, 347 (Mo. banc 2018) (internal citation omitted). Regarding forcible rape, the State alleged sexual intercourse with forcible compulsion. Similarly, regarding forcible sodomy, the State alleged deviate sexual intercourse with forcible compulsion. Moreover, the State sufficiently alleged forcible compulsion for each charge, claiming Appellant used physical force which overcame Victim's reasonable resistance. The State sufficiently alleged all of the elements of forcible rape and forcible sodomy.

Point IV is denied.

Point V

Appellant's fifth point claims the trial court erred in admitting the State's video evidence because it lacked proper foundation and lacked a proper chain of custody. Appellant contends the State did not prove the video is an accurate and faithful representation of what it purports to

show because the State did not present a witness personally familiar with the subject matter of the video.[10]

*Standard of Review*

The trial court is granted broad discretion in the admission of evidence. State v. Anderson, 76 S.W.3d 275, 276 (Mo. banc 2002). To preserve an objection for appellate review, "the objection must be specific, and the point raised on appeal must be based upon the same theory presented at trial." State v. Boydston, 198 S.W.3d 671, 674 (Mo. App. S.D. 2006) (internal quotation marks and citations omitted). A general objection will not preserve alleged errors because it fails to direct the trial court to the specific foundational element claimed to be deficient. Id. Therefore, the objecting party must make the reason for his objection reasonably apparent to the court to provide the objecting party's opponent an opportunity to correct any errors and to allow the court to correctly rule on the issue. Id. When an issue is properly preserved, this Court may reverse only if it is shown the trial court abused its discretion in admitting the evidence. State v. Williams, 97 S.W.3d 462, 468 (Mo. banc 2003).

As stated by our Supreme Court:

A trial court has broad discretion to admit or exclude evidence during a criminal trial, and error occurs only when there is a clear abuse of this discretion. A trial court abuses its discretion only if its decision to admit or exclude evidence is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration. This Court will reverse the trial court's decision only if there is a reasonable probability that the error affected the outcome of the trial or deprived the defendant of a fair trial.

State v. Wood, 580 S.W.3d 566, 574 (Mo. banc 2019) (internal quotation marks and citations omitted).

---

[10] Appellant dedicates a significant amount of time to showing the video's foundation could not be established under the silent witness theory. However, as the State made clear at trial, the video was not being introduced under the silent witness theory.

15

Moreover, in a bench-tried case, we grant the trial court more latitude in the admission of evidence. State v. Hein, 553 S.W.3d 893, 896 (Mo. App. E.D. 2018). "We presume a judge will not give weight to incompetent evidence, and, as such, it is difficult to base reversible error on the improper admission of evidence in a court-tried case." Id.

*Discussion*

The party offering a video as evidence must lay a proper foundation and establish it is an accurate representation of the person, place, or subject it purports to portray. St. Louis Univ. v. Geary, 321 S.W.3d 282, 289 (Mo. banc 2009). However, a witness testifying to such matters need not be familiar with the specific circumstances surrounding the creation of the video itself, nor does the witness need to have observed the exact view of the subject matter depicted in the video. State v. Brownlee, 501 S.W.3d 556, 559 (Mo. App. E.D. 2016).

At trial, Appellant raised a foundational objection to the admission of the video, which the court overruled. The State presented testimony from Rahn regarding her discovery of the video in Appellant's house. She testified she watched a brief portion of the video and recognized the room it was recorded in as Appellant's living room. Rahn also recognized Appellant, Appellant's couch, and Appellant's kitchen in the background. Victim also identified herself, Appellant, and Hunter in the video at trial.

Appellant also testified, without challenging the accuracy of the content shown, and stated the video was missing its ending and included blue screens not originally present on the tape. Although he stated the video was incomplete, he did not dispute its accuracy.[11] Notably, Appellant was one of the video's creators and personally observed and took part in the events

---

[11] Appellant's dispute in this regard concerns a challenge to the weight of the evidence rather than its foundational admissibility. See, e.g., State v. Wallis, 204 S.W.3d 732, 737 (Mo. App. S.D. 2006), and State v. Souders, 703 S.W.2d 909, 911 (Mo. App. E.D. 1985).

shown on the video. Appellant testified as to the sexual subject matter shown, acknowledging the video showed him having sex with Victim while she was unconscious, without disputing the accuracy of what was shown. Appellant did not deny he was depicted in the video or that the events actually happened. Thus, the trial court did not abuse its discretion in determining there was sufficient foundation to admit the video based on the testimony regarding its accurate representation of the place, person, or subject it purports to portray.

Appellant also raised a chain of custody objection to the DVD, which the court overruled. The court noted any contradictory evidence regarding whether the video had been altered was a credibility issue. To establish the proper chain of custody, the State must establish only that the video is the same article and in the same condition as when the State received it. See State v. Spears, 452 S.W.3d 185, 196 (Mo. App. E.D. 2014).

As stated in State v. McBenge:

> The chain of custody for an exhibit is considered to be sufficient where the State provides evidence showing reasonable assurance that the exhibit offered is the same evidence seized and is in substantially the same condition as when seized. The purpose of this rule is to prevent an exhibit from being altered, substituted, or tampered with—all issues which the trial court is in the best position to determine.
> The reasonable assurance standard does not require proof of hand-to-hand custody, a showing that the exhibit was continually watched, or proof of the exclusion of every possibility that the evidence has been disturbed. Moreover, the trial court may assume, absent a showing of bad faith or tampering, that the officials charged with having custody of an exhibit properly discharged their duties and that no tampering of the evidence occurred.

507 S.W.3d 94, 120 (Mo. App. E.D. 2016) (internal quotation marks and citations omitted).

Here, Rahn delivered the videotape to the Franklin County Sheriff's Department. Upon receipt, Captain Subke testified he delivered the video to Detective Corporal Nix. Detective Corporal Nix testified he converted the videotape to a digital format and burned the digital copy to a DVD. He stated the videotape and DVD were identical and nothing suggested the videotape

had ever been tampered with or altered. The tape was returned to Captain Subke, who testified he watched the entirety of both the videotape and the DVD and noticed no differences between the two.

Sufficient evidence existed to provide the trial court with reasonable assurance the exhibit offered had not been altered and was in substantially the same condition as when received. The State accounted for the chain of custody once the video came into its possession, and Appellant failed to establish any bad faith or tampering by the State. Absent such evidence, the trial court is free to assume the officials charged with having custody of the exhibits properly discharged their duties and did not tamper with the evidence. McBenge, 507 S.W.3d at 120.

The trial court did not abuse it discretion in admitting the video. Point V is denied.

<u>Conclusion</u>

We affirm the judgment of the trial court.

_____
SHERRI B. SULLIVAN, J.

Robin Ransom, P.J., and
Lisa P. Page, J., concur.

18